487 So.2d 590 (1986)
Kimberly CHILDRESS
v.
DEPARTMENT OF POLICE.
No. CA 4038.
Court of Appeal of Louisiana, Fourth Circuit.
April 11, 1986.
Writ Denied June 13, 1986.
Joseph J. Desalvo, Jr., New Orleans, for Kimberly Childress, plaintiff-appellant.
Salvador Anzelmo, City Atty., George A. Blair, III, Asst. City Atty., New Orleans, for New Orleans Police Dept., defendantappellee.
Before BYRNES, CIACCIO and WILLIAMS, JJ.
CIACCIO, Judge.
This is an appeal from a ruling of the Civil Service Commission upholding appellant's dismissal by the Superintendent of Police. We reverse.
Appellant joined the New Orleans Police Department in 1976 as a recruit. Following graduation from the Police Academy, she was assigned to the Urban Squad and then transferred to the First District. On August 10, 1979, appellant was shot from close range while making an arrest.
After being shot, appellant returned to work in November, 1979. Initially she was assigned as desk officer on the day watch, and then as desk officer on the night watch. She returned to full street duty in uniform on patrol around November 22, 1979.
Shortly after returning to full duty appellant was injured in an on-duty automobile accident. She and her partner were involved in a chase which took them from the French Quarter to the west bank of the Mississippi River. Their participation in the chase ended when the car hit a mud embankment and flipped over. Appellant was thrown through the driver's window causing her to suffer a severe concussion and several facial lacerations. In addition, her right ear was almost completely severed from her head.
While recuperating from this accident, appellant was transferred with her consent to the Juvenile Division. This transfer was effective around December 19, 1979. Appellant returned to work in December of 1979 working full shifts but being assigned limited duties pending complete recovery from her physical injuries. She eventually assumed the full duties of her position in the Juvenile Division. Appellant remained *591 assigned to the Juvenile Division until her dismissal in January of 1984.
During the four years appellant was assigned to the Juvenile Division she missed a lot of work while on sick leave or injuredon-duty status. She suffered from various psychological problems stemming from her on-duty injuries which were compounded by the death of a close personal friend. She also missed at least nine months of work in 1983 in connection with additional surgery required to treat some disc problems in her neck arising from the automobile crash.
While on duty in the Juvenile Division appellant apparently performed her duties quite well. There is no evidence that any superior officer or any peer personnel was ever disatisfied with any aspect of appellant's performance. Appellant also worked two full Mardi Gras seasons (1981 and 1982) on the street. (She missed Mardi Gras 1983 because of her surgery.)
Appellant's psychological difficulties manifested themselves in headaches, nightmares, and what her psychiatrist called "what-ifs" fears. Appellant and her psychiatrist worked on resolving her difficulties as they affected her personal life. This work was, from all accounts, successful. Left to be resolved were the difficulties that affected appellant's professional life as a police officer.
When appellant returned to work after her surgery in 1983, she brought with her a letter from her psychiatrist which outlined duty restrictions relating to her psychological distress. Although the restrictions limited her ability to perform in many police officer capacities, they were compatible with appellant's current assignments in the Juvenile Division. The restrictions were listed as follows:
1. She is unable to work in uniform but may carry a weapon and appropriate communications devices.
2. She is unable to work in a marked patrol unit or on street duty.
3. She should work on duty watches during which other personnel are in the office with her and as long as this is possible there are no restrictions as to shift assignments.
As a final step toward appellant's return to unlimited duty without restrictions, the psychiatrist recommended a systematic desensitization.
The desensitization program would be conducted by a therapist other than appellant's psychiatrist, because he is not skilled in performing the recommended procedure. The program would take approximately a month, involving twelve to fifteen sessions with the therapist. The final three to five hours would require the cooperation of the Police Department in that appellant would be pursuing the therapy while in full uniform in a marked police unit as if on duty; appellant would not actually be on duty and she need not actually be "on the street"; the therapy would involve "imagining" what real-life situations would be like with the therapist getting appellant to work through the anxieties and fears involved. Appellant's psychiatrist opined that prognosis for return to unlimited, unrestricted duty was very good following the desensitization program.
Without consulting either appellant or her psychiatrist the Police Superintendent decided that appellant should be dismissed. By letter dated December 9, 1983, the Superintendent informed appellant that because she was not able to perform the duties of police work, under the authority of Rule IX, Section 1.1 of the City Civil Service Rules, she had until December 31, 1983, to resign or she would be "dropped from the rolls." The letter went on to inform appellant that she was being given "this extra time in the event that you may wish to apply for a disability pension."
The desensitization program was never implemented because completion of the recommended program required cooperation of the police department. The police department did not directly respond concerning cooperation, but by demanding appellant's resignation implied that no cooperation would be forthcoming. Apparently no consideration was given to the possibility *592 of implementing a desensitization program which did not involve the three to five hours use of a marked police unit.
Appellant did not resign. By letter dated January 3, 1984, the Superintendent informed appellant that since she had not resigned, she was being "dropped from the rolls effective December 31, 1983." An appeal was brought before the Civil Service Commission for the City of New Orleans. After a hearing before a Commission hearing examiner, the Commission dismissed the appeal. Appellant now asks us to review that decision.
As mentioned above, the evidence in this matter was presented before a hearing examiner. The record thus compiled was filed with the Commission without comment or recommendation. Under these circumstances the standard of appellate review is to determine whether the conclusion reached by the Commission is arbitrary, capricious, or characterized by an abuse of discretion. Alongi v. Department of Police, 452 So.2d 798 (La.App. 4th Cir.1984).
In this case we find a clear abuse of discretion. In the service of the Police Department appellant suffered multiple severe physical injuries. These traumas also precipitated the manifestation of certain psychological difficulties. Appellant nevertheless continued to serve the Department well in the duties to which she was assigned.
The testimony of the Superintendent makes clear that he decided to dismiss appellant on the basis of the letter from her psychiatrist. The Superintendent interpreted the letter as indicating that appellant was permanently disabled. The Commission noted that the doctor indicated that a desensitization program "might" be a viable treatment approach.
The Commission placed great weight on the testimony of appellant and her psychiatrist that she currently was unable to perform all of the duties of a full-time officer. The Commission also expressed critical concern that after four years appellant would still need to undergo a twelve to fifteen hour desensitization program which would require the cooperation of the Department for three to five hours and involved appellant doing things not permitted of a decommissioned officer. In the same letter which demanded her resignation, the Superintendent informed appellant that he was decommissioning her.
If the Superintendent decided that appellant was permanently disabled, he was required to recommend that she be placed on disability retirement. City Civil Service Rules, Rule VIII, Section 2.1(e)(3). The record does not contain evidence that the Superintendent made such a recommendation. Absent such a recommendation, the Superintendent was without authority to demand appellant's resignation. Imbornone v. Department of Police, 471 So.2d 274 (La.App. 4th Cir.1985).
Further, appellant's psychiatrist testified that following the recommended desensitization program, his prognosis for appellant's return to unlimited duty without restrictions was good. To conclude that it was better to dismiss appellant than to afford her the minimal cooperation which was requested in order to facilitate her probable complete rehabilitation was an abuse of discretion. The Superintendent may not have been aware of this prognosis at the time of dismissal, but he could have easily obtained this information. To the extent that the testimony revealed to the Commission that the dismissal may have been based upon an erroneous conclusion, the Commission should have corrected the error. See Alongi v. Department of Police, supra.
We hold that the Civil Service Commission for the City of New Orleans abused its discretion by ruling to uphold appellant's dismissal. The ruling of the Commission is, therefore, reversed. Appellant is reinstated as of December 31, 1983, as a fully commissioned police officer, and is to be accorded all benefits which would have accrued had she never been dismissed subject to a credit and set-off for all wages and salaries earned by appellant in private employment *593 during the period of separation. La.R.S. 49:113
REVERSED.