944 So.2d 760 (2006)
Michael MARZIALE
v.
DEPARTMENT OF POLICE.
No. 2006-CA-0459.
Court of Appeal of Louisiana, Fourth Circuit.
November 8, 2006.
*761 Alan B. Tusa, Carol T. Richards, Tusa & Richards, L.L.C., Covington, LA, for Plaintiff/Appellant.
Penya M. Moses-Fields, City Attorney, Joseph V. DiRosa, Jr., Chief Deputy City Attorney, Heather M. Valliant, Assistant City Attorney, James B. Mullaly, Assistant City Attorney, New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge MAX N. TOBIAS, JR., Judge EDWIN A. LOMBARD, and Judge ROLAND L. BELSOME).
*762 MAX N. TOBIAS, JR., Judge.
The appellant, Michael Marziale ("Marziale"), appeals his dismissal from the New Orleans Police Department (hereinafter, "NOPD" or "appointing authority"), which determined that he was either unable or unwilling to perform his duties as a police officer after more than three years of extended medical leave. Marziale was injured in November 2000 while participating in the department's "Fitness for Duty" program; he sustained an inguinal hernia, a torn rotator cuff, and a lumbosacral strain. Marziale contests the assertion that he was unwilling to come back to work or permanently disabled; rather, he contends that his treatment has been hindered by the appointing authority, extending his recuperation time, and that the appointing authority failed to offer him placement in a light duty position although light duty positions existed.
On 13 November 2000, Marziale, a veteran of almost 30 years with the NOPD and a sergeant, was involved in a program administered by the police department called "Fitness for Duty." The program consisted of push-ups, sit-ups, and carrying 50-pound weights. During the course of the exercises, Marziale complained of pain to his right shoulder, stomach, and groin area. On 15 December 2000, Lawrence Durante, M.D., a physician at Tulane Medical Center diagnosed Marziale with an inguinal hernia, right shoulder strain, and lumbar strain. Dr. Durante opined that Marziale was "unable to return in any capacity at [that] time" and deferred treatment to a surgeon and an orthopedist.
Subsequently, Marziale treated with C. Edward Foti, M.D., to repair his hernia and with Melvin L. Parnell, Jr., M.D., an orthopedist, for his rotator cuff injury and lumbar strain. As a result, two sets of Form 50s[1] were submitted to the appointing authority regarding Marziale's treatment.
The first Form 50 completed by Dr. Parnell is dated February 2001. At that time, Dr. Parnell noted that Marziale suffered from a right shoulder strain, rotator cuff tear, and lumbosacral strain and was unable to return to duty in any capacity. Dr. Parnell completed nine additional Form 50s over the next three years. Except for the Form 50s dated 9 May 2002 and 6 January 2003, all of them listed Marziale as "unable to return in any capacity at this time." The Form 50 dated 1 March 2002 noted that Marziale's estimated length of time to return to duty was dependent on right shoulder surgery. On 9 May 2002, Dr. Parnell released Marziale to light duty with restrictions, and noted that he had "reached maximum medical improvement without surgery." He further noted that Marziale could not return to full duty without surgery. Dr. Parnell performed arthroscopic surgery to repair Marziale's torn rotator cuff on 12 June 2002. On 5 August 2002, Dr. Parnell indicated in a Form 50 that Marziale was not able to return to duty at that time.
Marziale underwent a functional capacity evaluation ("FCE") on 18 November 2002. The FCE indicated that Marziale was able to work at a "light-medium physical demand level for an 8-hour day." *763 However, he was not placed in a light duty position by the NOPD.
On 6 January 2003, Dr. Parnell released Marziale to light duty, but for only four hours a day. He recommended in the Form 50 that Marziale increase his work day by one hour daily every two weeks. He further noted that Marziale should "be restricted from working in the field until he reaches maximum medical improvement." Dr. Parnell estimated that Marziale would be able to resume full duty in two months.
Dr. Foti released Marziale to light duty on 9 March 2001, and estimated that he would be able to return to full duty approximately six weeks following surgery to repair the hernia. Dr. Foti performed the surgery on 16 April 2001, and released Marziale to full duty as of 28 April 2001.
The appointing authority issued a termination letter to Marziale on 22 June 2004, detailing the Form 50s that Marziale had submitted to it and noting that he had not presented any evidence to the department that he would ever be able to perform the duties required by his civil service classification. The letter also noted that he had undergone two surgeries thus far in his treatment, the last having taken place more than two years prior to his termination. Further, the letter stated that Marziale had produced no documentation to justify his absence since the submission of a Form 50 dated 17 October 2003. Therefore, the appointing authority terminated his employment pursuant to Rule IX of the Rules of the City Civil Service Commission ("CCSC").[2]
Marziale filed an appeal to the CCSC, asserting that his termination was "arbitrary, unreasonable, and without any basis in fact or law to support the conclusion reached and the penalty imposed upon the appellant." A hearing was scheduled for 12 November 2004.
Sergeant James Crespo ("Sgt. Crespo") testified at the hearing as the supervisor of the Administrative Duties Division ("ADD") of the appointing authority. He testified that ADD receives the Form 50s submitted on behalf of the injured police officers, and based upon the limitations placed upon the officers by their physicians, assigns them to limited capacity positions. Sgt. Crespo testified that in order to be transferred to ADD, an officer must have been on medical leave for more than 30 days. The ADD's "rule of thumb" was to allow the injured officer the opportunity to resume his or her former place of assignment, unless the officer was unable to accept that assignment. If the officer was unable or unwilling to return to his or her former assignment, ADD would attempt to reassign the officer. Sgt. Crespo further explained that an officer was allowed to remain on light duty for one year; after that year was complete, the officer would either be released to full duty, or the Rule IX process would begin.
Sgt. Crespo described the Form 50s and testified that an officer who was on light duty was required to provide a Form 50 to the department once a month, while an officer on extended medical leave (like Marziale) was required to submit a Form 50 every two months. During the more *764 than three years that Marziale was on medical leave, Sgt. Crespo received several Form 50s.
Sgt. Crespo testified that Marziale came to ADD around the end of 2000, but was never placed on light duty because he was never released by his physician to light duty for more than four hours a day. Sgt. Crespo testified that it was the unwritten policy of the department under then-Assistant Superintendent Dwayne Johnson ("Chief Johnson") that if an officer were not able to work a full eight-hour day on light duty, he would not be assigned any light duty work. According to Sgt. Crespo, the department (through ADD) had applied that policy ever since, even though it had never been codified.
Sgt. Crespo was directed to the Form 50 dated 9 May 2002, in which Dr. Parnell released Marziale to light duty and further found that he had reached "maximum medical improvement without surgery." Crespo testified that although Marziale was released to full time light duty as required for a light duty assignment, Chief Johnson denied his assignment because Marziale was scheduled to undergo surgery in three weeks. Dr. Parnell indicated on the Form 50 that Marziale would not be able to return to full duty without surgery, and Sgt. Crespo explained that Chief Johnson did not want to bring him back for only three weeks.
Sgt. Crespo was questioned about the procedures in place for the coordination of information between ADD and the workers' compensation administrator for the city, Cannon Cochran Management Services, Inc. ("CCMSI"), regarding an injured officer's medical status. He testified that ADD only received the Form 50s, while CCMSI received medical records from treating physicians. He admitted that although he might have contacted CCMSI "sometimes" to obtain the updated medical records or status of a particular officer, he did not recall contacting CCMSI regarding Marziale. He testified that ADD had no obligation to remind an officer to submit Form 50s, but admitted that ADD had in the past sent courtesy letters to Marziale reminding him to do so. Sgt. Crespo indicated that because Marziale had been selected as a Rule IX candidate, he did not contact Marziale or CCMSI for updated medical information.
The appointing authority next presented the testimony of Kevin Pierre ("Pierre"), the workers' compensation supervisor for CCMSI overseeing Marziale's file. He testified that it was his practice to review all of his case files every 60 days "from scratch" to make sure that they were being kept up-to-date and to track the status of injured officers. He testified that his office had handled Marziale's file since the date of the accident, and that his office had never received any documentation from a medical provider indicating that Marziale could return to full duty. He also testified that the adjuster on the file (who was no longer employed by CCMSI as of the hearing and was not called to testify) was notified in late 2003 or early 2004 that Marziale was to be the target of a Rule IX action.
Pierre also testified that adjusters at CCMSI were instructed to forward medical records received from treating physicians to Sgt. Crespo at ADD. He testified that CCMSI did not make decisions regarding assignment of officers to light duty work, but that once a determination came in from a physician that an injured officer could perform light duty work, CCMSI would contact ADD to see if it could accommodate the officer with an assignment. He confirmed that ADD had not assigned any part-time light duty work in several years, and it was his understanding that this was the policy of *765 the appointing authority. He also testified that if he had received a recommendation from a treating physician that an officer begin light duty work for only four hours a day, with a gradual increase in the workday, he would have forwarded that recommendation to Sgt. Crespo, and he indicated that he had done so regarding Marziale. Pierre testified that regardless of the involvement of CCMSI in the process, the appointing authority made all decisions regarding assignments to light duty work.
At the hearing, Marziale testified that his termination had come as a complete surprise and that he had offered to return to work at his pre-termination hearing. He testified that he was unaware that the appointing authority had not received all of the Form 50s completed by his physician. In fact, at the pre-termination hearing, Marziale attempted to provide the appointing authority with a Form 50 and a report by Dr. Parnell that described a "minimally invasive" back surgery. The Form 50 indicated that Marziale could return to work in approximately three months. The appointing authority refused to accept the documentation at the hearing.[3] Marziale also stated that at the time of the pre-termination hearing, he was waiting to receive an epidural steroid injection for his back that had been ordered by Dr. Parnell, but that CCMSI had not approved the procedure. CCMSI subsequently approved the injection following his termination.
Marziale testified that CCMSI had been slow to approve his treatment in other areas, as well. His physical therapy regimen was interrupted more than once because of delayed approval of treatment by CCMSI. Also, he testified that treatment for his hernia had been delayed several months, and that his condition worsened during that time.
Marziale testified that he reported to ADD in person approximately every two weeks to pick up his check. On those occasions, he asked if ADD needed any documentation from him, and was told no. He also recalled speaking to Sgt. Crespo on these visits. He stated that he had never been given any indication that ADD was missing any Form 50s until he received the pre-termination letter.
Marziale testified that he had made several attempts to find light duty work with the department. He had been advised to find a department in which he could work, and he recalled that he spoke to Captain James Howley ("Captain Howley") regarding placement in his department, Technical Services. Marziale testified that he had worked in Technical Services in the past, and that he and Howley had thought it would be a good fit. He also testified that he had approached another officer regarding working in employee relations, but that ADD had never offered him any assignment while he was on medical leave. Following Marziale's testimony, the hearing adjourned until January 2005.
On 12 January 2005, at the continuation of the hearing, Marziale presented the testimony of Captain Howley. As a captain in Technical Services, he headed up the division in charge of building security, roll-in stock, the supply room, and the print shop. Captain Howley testified that he had had several light duty positions available in technical services in the time since Marziale had been injured, and that it was not unheard of for an officer on light duty to work only four-hour days, if only temporarily. He confirmed the policy of the *766 appointing authority to reassign officers to the division of their last assignment (which for Marziale would have been the Second District), but he also noted that it was entirely within the superintendent's discretion to reassign an injured officer, and that he knew of no formal rule preventing him from assigning Marziale to Technical Services. Captain Howley testified that he had been short-handed over the past few years and that he could have used Marziale in the print shop performing light duty work.
On 2 May 2005, the hearing examiner issued a report concluding that Marziale's appeal should be denied on the grounds that the appointing authority established by a preponderance of the evidence that it terminated Marziale for cause. The examiner noted that it was not clear if Marziale would ever be able to return to the department, and further noted that Marziale could have postponed his retirement and returned to work even after the appointing authority had terminated him, but did not do so. The examiner reasoned that after allowing Marziale to remain on medical leave for almost four years, the appointing authority was "justified in making a determination as to the Appellant's ability to work in a full capacity." Marziale appealed his decision to the CCSC.
The CCSC issued an opinion dated 12 August 2005 denying Marziale's appeal.[4] In its opinion, the CCSC found that Marziale never provided a Form 50 that released him to full duty, or a Form 50 that released him to limited duty with an estimated return to full duty. It further noted that Marziale testified at the hearing that he could work in a limited capacity position, but could not provide a date when he could return to full duty.
Marziale appealed the decision of the CCSC, and assigned seven errors. First, Marziale asserts that the appointing authority did not meet its burden of proof at the hearing and the CCSC did not decide the case from the facts presented. Second, he asserts that the penalty imposed by appointing authority was not commensurate with the complained-of dereliction. Third, Marziale maintains that the reasons cited for his termination by the appointing authority are without basis in fact, and his termination violated Rule IX. Fourth, the appointing authority "fabricated rules" to prevent him from returning to light duty work, which constituted a violation of his due process rights. Fifth, Rule IX was improperly invoked because his physician cleared Marziale to work. Sixth, CCMSI delayed approval of recommended medical procedures, which prevented Marziale's rehabilitation and return to full duty. Finally, Marziale asserts that the hearing officer committed manifest error by engaging in advocacy prejudicial to Marziale, preventing him from receiving a "reasonable hearing."
An employee with permanent status in the classified city service may only be terminated, or otherwise subjected to disciplinary action, in writing and for good cause. La. Const. art. X, § 8(A); Walters v. Dept. of Police of New Orleans, 454 So.2d 106, 113 (La.1984). Good "cause" for the dismissal of such a person includes conduct prejudicial to the public service involved or detrimental to its efficient *767 operation. Id. The appointing authority has the burden of proving, by a preponderance of the evidence, that the complained-of activity or dereliction occurred, and that such dereliction bore a real and substantial relationship to the efficient operation of the appointing authority. Cittadino v. Department of Police, 558 So.2d 1311, 1315 (La.App. 4 Cir.1990).
The burden of proof on appeal to the CCSC shall be on the appointing authority. Walters v. Dept. of Police of New Orleans, 454 So.2d at 112-113. The decision of the CCSC is subject to review on any question of law or fact upon appeal to this court, and this court may only review findings of fact using the manifestly erroneous/clearly wrong standard of review. La. Const. art. X, § 12(B); Walters, 454 So.2d at 114. In determining whether the disciplinary action was based on good cause and whether the punishment is commensurate with the infraction, this court should not modify the CCSC's order unless it was arbitrary, capricious, or characterized by an abuse of discretion. Id. A decision by the CCSC is "arbitrary or capricious" if there is no rational basis for the action taken by the CCSC. Bannister v. Department of Streets, 95-0404, p. 8 (La.1/16/96), 666 So.2d 641, 647.
First, we examine whether the appointing authority met its burden at the hearing before the CCSC. In order to prevail at the hearing, the appointing authority had to establish by a preponderance of the evidence that Marziale was either unwilling or unable to perform his duties as a police officer, or that he had failed to submit documentation "justifying his absence," insofar as that was the stated reason for his termination. We find that the appointing authority failed to meet its burden of persuasion.
Marziale has never stated or admitted that he was unwilling to return to work. In fact, a review of the recording of the pre-termination hearing reveals that Marziale offered to come back to work. There is no evidence in the record, and the appointing authority does not assert, that it ever offered Marziale a light duty position that he refused. In fact, the record reflects that even when Marziale's physicians released him to light duty work, it was the appointing authority that made the decision to not offer a position to Marziale. Coupled with the testimony presented by Marziale that such positions existed within the department, the appointing authority's failure to attempt to accommodate Marziale seems to be the real reason Marziale has never returned to work. We note that the appointing authority never requested an independent medical evaluation, and did not present any medical testimony at the hearing that Marziale was permanently disabled or would not be able to resume his duties at some time in the future.
The appointing authority directs us to Wilson v. New Orleans Police Department, 00-2484 (La.App. 4 Cir. 12/19/01), 804 So.2d 838, in which this court affirmed the termination of a police officer who was injured on duty and who never returned to full duty. Although we found that the appointing authority had put forth ample evidence concerning its policy of terminating officers who required more than temporary limited duty, the Wilson case is distinguishable from the case sub judice because Wilson had been deemed unable to ever return to full duty by his physician. There has never been a medical determination that Marziale's injuries would prevent him from returning to full duty in the future.
In Childress v. Department of Police, 487 So.2d 590 (La.App. 4 Cir.1986), this court held that the CCSC abused its discretion in upholding the termination of an officer who had been injured on duty, and *768 whose psychiatrist would not release her to full duty without a "desensitization program" that would have to be administered by the appointing authority. The appointing authority interpreted the recommendation of the psychiatrist to mean that Childress was permanently disabled. However, this court noted that her psychiatrist also opined that with cooperation from the appointing authority in her recovery, she would be able to resume full duty without restrictions. We held that:
. . . to conclude that it was better to dismiss appellant than to afford her the minimal cooperation which was requested in order to facilitate her probable complete rehabilitation was an abuse of discretion.
Id. at 592.
Similarly, we find that the obstacles Marziale faced in getting his medical treatment approved by CCMSI at the very least delayed his recovery. Further, Dr. Parnell's recommendation that Marziale begin working 4-hour days, then gradually increasing his workday, was reasonable. The appointing authority's refusal to accommodate him so that he could return to work was an abuse of discretion. Further, the CCSC was clearly wrong in finding that the appointing authority had carried its burden of proof at the hearing of Marziale's appeal.
We recognize that the appointing authority has a legitimate need to maintain a fully staffed and able-bodied police department. Wilson, 00-2484 at p. 10, 804 So.2d at 844. However, we are troubled that the appointing authority did not take the steps to determine or establish that Marziale would not be able to resume his duties after successful treatment of his ailments. Further, it was established by a preponderance of the evidence that light duty positions existed in the print shop. The use of unwritten rules to disqualify Marziale from light duty work that existed is also troubling and flies in the face of the purpose of the civil service rules: to protect civil service employees from arbitrary or discriminatory disciplinary action and to promote a system based on "merit principles and scientific methods." La. R.S. 42:721. See also Sanders v. Department of Health & Human Resources, 388 So.2d 768, 771 (La.1980).
Because we find that the appointing authority did not meet its burden of proof at the civil service hearing that Marziale would not be able to return to full duty, and further that the CCSC was manifestly erroneous in finding that it had, we pretermit discussion of the remaining assignments of error. For the foregoing reasons, we reverse the decision of the CCSC and order that Marziale be reinstated.
REVERSED.
NOTES
[1] A Form 50 is a one-page form completed by an injured officer's treating physician detailing his condition and prognosis. The form allows the physician to choose from four options: 1) able to return to full duty; 2) will never be able to return to full duty as a police officer; 3) unable to return in any capacity at this time (INCLUDING EXTENSIVE LIGHT DUTY PROGRAM); or 4) able to return to Limited Duty with the following restrictions:. . . . (Emphasis in original.) The form also requires the physician to estimate the length of time until the officer can return to either limited or full duty.
[2] Rule IX of the CCSC Rules states in pertinent part:

When an employee in the classified service is unable or unwilling to perform the duties of his/her position in a satisfactory manner, or has committed any act to the prejudice of the service, or has omitted to perform an act it was his/her duty to perform, or otherwise has become subject to corrective action, the appointing authority shall take action warranted by the circumstances to maintain the standard of effective service. The actions may include one or more of the following: 1) removal from service. . . .
[3] In fact, the record reflects that CCMSI received Dr. Parnell's report with Marziale's estimated return to full duty on 4 June 2004, several days prior to the pre-termination hearing.
[4] The copy of the CCSC opinion contained in the record appeared to be signed with "rubber stamp" signatures of the CCSC members, which was confirmed to represent the signatures of the commissioner issuing the decision. The opinion in the record is nonetheless marked as an "original." We note the importance of maintaining the integrity of the record on appeal, and urge the CCSC to supply at the very least certified copies of its opinions for the record.