10 So.3d 861 (2009)
Reynolds RIGNEY and Jake Schnapp
v.
DEPARTMENT OF POLICE.
No. 2008-CA-1435.
Court of Appeal of Louisiana, Fourth Circuit.
April 15, 2009.
*862 Kevin V. Boshea, Metairie, LA, for Jake Schnapp.
George S. Hesni II, Gretna, LA, for Reynolds Rigney.
Russell B. Ramsey, New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge MAX N. TOBIAS, JR., Judge DAVID S. GORBATY).
DAVID S. GORBATY, Judge.
In this appeal, Reynolds Rigney and Jake Schnapp contend that the Civil Service Commission erroneously denied their appeals and upheld their terminations. For the reasons set forth below, we affirm.

FACTS AND PROCEDURAL HISTORY
On December 30, 2006, appellant Jake Schnapp was in command of a plainclothes contingent of New Orleans police officers *863 in the French Quarter. The officers executed a stop and "hard takedown" of a pedestrian, Ronald Coleman, who was either identified by an alleged victim as a pickpocket, or suspected of having been smoking marijuana at the time. A search of Coleman and the area after the takedown revealed no evidence of either crime. The police contingent took Coleman, who was injured in the incident, to the Eighth District Police Station a block away. There, the police offered him medical treatment, which he declined, and released him without booking him into custody. Coleman subsequently complained to the Police Integrity Bureau ("P.I.B."), which conducted an investigation. Ultimately, one of the policemen, Reynolds Rigney, was charged with using excessive force on Coleman during the takedown. Schnapp was charged with neglect of duty and injuring public records.
Initially, the Deputy Superintendent recommended suspension for both officers. That recommendation was overruled by Chief Warren Riley, who terminated both appellants on July 3, 2007. Hearing Officer Harry Tervalon heard testimony in this matter and recommended reinstatement of the officers. The Civil Service Commission ("CSC") overruled the Hearing Officer on October 15, 2008 and maintained the terminations. Appellants subsequently filed this appeal.

DISCUSSION
Appellants argue that the CSC's dismissal of their appeals was arbitrary, capricious, an abuse of discretion, and a denial of due process.
The CSC has authority to "hear and decide" disciplinary cases and to modify, reverse, or affirm a penalty. La. Const. Art. X sec. 12; Pope v. New Orleans Police Dept., 04-1888 (La.App. 4 Cir. 4/20/05), 903 So.2d 1. The Commission is to reduce a penalty when there is insufficient cause for imposing the greater penalty. Id. at 4. The Appointing Authority must prove by a preponderance of the evidence that the complained of activity or dereliction occurred, and that it bore a real and substantial relationship to the Appointing Authority's efficient operation. Cure v. Dept. of Police, 07-0166, p. 2 (La.App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094, citing Marziale v. Dept. of Police, 06-0459, p. 10 (La. App. 4 Cir. 11/8/06), 944 So.2d 760, 767. In determining whether disciplinary action was based on good cause and whether the punishment was commensurate with the infraction, this court modifies the CSC's order if it was arbitrary, capricious, or characterized by an abuse of discretion. Id. A decision is "arbitrary and capricious" if there is no rational basis for the CSC's action. Cure, 07-0166, p. 2, 964 So.2d at 1095.
Schnapp argues that he did not violate La. R.S. 14:132, injuring public records. He wrote a Signal 21 Report naming every officer involved, including Rigney. A Use of Force Report was not required by law to be filed or deposited. Such a report is not a public record, but rather an internal document. Further, since Coleman was not arrested, Schnapp was not required to write a formal police report, but he did. Thus, Schnapp argues, his termination was inappropriate. Schnapp documented the incident by authoring a Signal 21 Miscellaneous Incident Report and a Resisting Arrest Report. In the Signal 21 Report, Schnapp stated that the first officer to reach Coleman:
[A]ttempted to physically detain him while simultaneously identifying himself as a police officer. The force in which Ronald Coleman turned coupled with the fact that the ground was wet and it was raining caused both the investigator *864 and Ronald Coleman to fall to the ground.
His Resisting Arrest Report states:
Investigators attempted to detain Ronald Coleman. Ronald Coleman and one of the investigators fell to the ground. At that point Ronald Coleman was flailing his arms and kicking his legs. Subject was ultimately handcuffed by the investigators. Subject was unaware at first that the investigators were plainclothes police officers.
The incident occurred directly outside a bar, The Copper Monkey, located at 725 Conti Street. Unbeknownst to the police officers, the incident was captured by a surveillance camera in the bar that produced a digital video recording ("DVR") of the incident. P.I.B. investigators recovered the DVR.
The DVR contradicted Schnapp's written reports in that it: (1) showed no attempt by any police officer to display a badge or prove authority to Coleman; (2) showed Coleman being taken down by several officers simultaneously; (3) showed Coleman being taken down by use of force rather than by an accidental slip and fall on a wet sidewalk; and (4) showed Coleman having been completely subdued on his stomach by several officers while Rigney delivered a series of blows to Coleman's back with his knee and fist, while Schnapp watched. The P.I.B. concluded that Schnapp had minimized the incident by failing to report all of the officers involved in the takedown, the manner of its occurrence, and omitting the use of force by Rigney.
Schnapp is essentially accused of misstating facts in records of an arrest. The record is replete with support for the CSC's decision to terminate him. We find that the CSC did not abuse its discretion in upholding his dismissal.
Rigney avers that the CSC erred in concluding that he used excessive force or committed a second-degree battery upon Coleman. He argues that he did not intend to inflict serious bodily injury. Further, he contends that Coleman was not injured seriously, as he did not lose consciousness or experience extreme physical pain.
Coleman was treated at Ochsner Hospital for a concussion. Further, the DVR showed Rigney beating and punching him repeatedly. It cannot be said that the CSC abused its discretion in finding that Rigney used excessive force in the incident. This assignment of error has no merit.
Appellants further argue that the tardiness of the CSC's decision in violation of its own rules deprived them of due process.
Appellants were given an opportunity to be heard at a "meaningful" time before they were terminated. See Hamilton v. Royal International Petroleum Corp., 05-0846 (La. 2/22/06), 934 So.2d 25. Although the CSC may not have issued its ruling timely in accord with its own regulations, there is no penalty or consequence attached to such default that would entitle appellants to reversal. This assignment of error lacks merit.

CONCLUSION
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
MURRAY and TOBIAS, JJ., concur and assign reasons.
MURRAY, J., Concurs and Assigns Reasons.
The conclusions reached by the Commission are supported by the record. Although the Copper Monkey's security *865 camera does not show the officer's initial approach, it does document the actions of officer Rigney.
Likewise, reports completed by Sergeant Schnapp are missing key details of the incident that are documented by the recording from the security camera.
Although termination is the harshest punishment for misconduct, I cannot say that the decision of the Civil Service Commission was arbitrary and capricious. For this reason I concur in the affirmation of the Civil Service Commission's decision to maintain the termination of these two officers.
TOBIAS, J., Concurs and Assigns Reasons.
As this court stated in Stevens v. Dept. of Police, 00-1682, p. 8 (La.App. 4 Cir. 5/9/01), 789 So.2d 622, 627:
The public puts its trust in the police department as a guardian of its safety, and it is essential that the appointing authority be allowed to establish and enforce appropriate standards of conduct for its employees sworn to uphold that trust. Newman [v. Department of Fire, 425 So.2d 753 (La.1983)].... Indeed, the [Civil Service] Commission should give heightened regard to the appointing authorities that serve as special guardians of the public's safety and operate as quasi-military institutions where strict discipline is imperative.
This standard has been followed by this court consistently, with infrequent deviation, since its enunciation.

OFFICER RIGNEY'S DISCIPLINE
La. R.S. 14:34.1 in pertinent part defines second degree battery as follows:
Second degree battery is a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury.
For purposes of this article, serious bodily injury means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.
I do not find that the record supports that Officer Rigney committed the crime of second degree battery because Mr. Coleman did not become unconscious, suffer "extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death." However, the record does support and DVR of the incident confirms to the eyes of a trained police officer such as the chief of police that Officer Rigney used excessive force against Mr. Coleman under the circumstances. Discipline was in order. Neither the appointing authority nor the Commission exceeded the authority or discretion given them in penalizing Officer Rigney as they did.

SERGEANT SCHNAPP'S DISCIPLINE
Neglect of Duty, as embodied in Rule 4 regulating the conduct of New Orleans police officers, states:
A. Each employee, because of his grade and assignment, is required to perform certain duties and assume certain responsibilities. An employee's failure to properly function in either or both of these areas constitutes a neglect of duty,
B. An employee with supervisory responsibility shall be in neglect of duty whenever he fails to properly supervise subordinates, or when his actions in matters relating to discipline fail to conform with the dictates *866 of Departmental Rules and Procedures.
La. R.S. 14:132, relative to injuring public records, reads in pertinent part:
A. First degree injuring public records is the intentional removal, mutilation, destruction, alteration, falsification, or concealment of any record, document, or other thing, filed or deposited, by authority of law, in any public office or with any public officer.
B. Second degree injuring public records is the intentional removal, mutilation, destruction, alteration, falsification, or concealment of any record, document, or other thing, defined as a public record pursuant to R.S. 44:1 et seq. and required to be preserved in any public office or by any person or public officer pursuant to R.S. 44:36.
Whereas I agree with the majority that the record on appeal does establish that Sergeant Schnapp did neglect his duties, was appropriately cited for disciplinary action, and should be punished for his offense, I find the record contains insufficient evidence that Sergeant Schnapp committed the crime of injuring public records that is implicit in the appointing authority's and Commission's decision.
Sergeant Schnapp did not append to his report of the incident involving Mr. Coleman the Use of Force/Resisting Arrest form mandated by the regulations. Such omission, whether intentional or not, fails to rise to the level of a violation of La. R.S. 14:132 as written by the legislature. The omission may have resulted in an incomplete and inaccurate report, but it does not rise to the criminal level of falsification in my view because falsification implies affirmatively stating something that is not true, not telling a partial truth. Per the statute, Sergeant Schnapp did not conceal any "record, document or other thing" because by implication the statute requires that the concealment must take place after a record, document, or other thing has been deposited with the appropriate authority.
Nevertheless, discharge of a police officer for neglect of duty is within the ambit of the regulations. (See Thompson v. New Orleans Police Dept., 02-1804, p. 1 (La. App. 4 Cir. 4/1/03), 844 So.2d 940, 942 (Tobias, J., concurring), referencing Chapter 26.2 of the disciplinary guidelines of the New Orleans Police Department.)
I therefore respectfully concur in the decision of the majority.