JOAN BERNARD ARMSTRONG, Chief Judge.
 

 | lieutenant Jimmie Bobb (Lt. Bobb), an employee of the Department of Police for the City of New Orleans (NOPD), appeals a decision of the Civil Service Commission (Commission), denying his appeal of the discipline imposed by the appointing authority, the NOPD. For the following reasons, we reverse.
 

 The NOPD hired Lt. Bobb on May 25, 1973, and on November 17, 2007, promoted him to his current status.
 

 By letter dated February 13, 2008, the NOPD suspended Lt. Bobb for violation of department defensive driving techniques in
 
 *1055
 
 connection with an accident on March 15, 2007. The March 15, 2007 accident occurred as Lt. Bobb drove the wrong way on a one-way street. Lt. Bobb was also ordered to attend an Accident Avoidance Training Course for one day, on his own time. The letter of February 13, 2008 further provided, “you the operator shared a portion or all the responsibility for the accident/incident, in which the operator of the department vehicle has disregarded laws and policies governing traffic laws and/or safe driving practices.”
 

 Lt. Bobb appealed the decision of the NOPD to impose discipline as a result of the accident to the Commission. The Commission appointed a hearing officer to 12take testimony, and a hearing was held on May 6, 2008. At the hearing, the parties stipulated that on March 15, 2007, Lt. Bobb did drive the wrong way on a one-way street and was involved in an accident. The accident resulted in damages to the police vehicle in the amount of $17,826.88 and damages to the other vehicle in the amount of $5,375.00.
 

 Capt. Bryan Weiss, a member of the NOPD’s Accident Review Board (ARB), testified that the ARB reviews accident reports, and thereafter decides whether or not discipline should be imposed on the driver involved in the accident. Following a hearing, the ARB determined that Lt. Bobb drove carelessly in violation of 17271 MCS Chapter 154, Section 383, relative to careless operation, and drove against traffic, a violation of 17271 MCS Chapter 154, Section 601. The ARB recommended to the NOPD that Lt. Bobb receive a five-day suspension and attend a driver’s training course.
 

 Capt. Weiss based his recommendation on a finding of fault against Lt. Bobb for driving the wrong way on a one-way street. Capt. Weiss recalled that Lt. Bobb stated at the hearing before the ARB that he did not know it was a one-way street. Capt. Weiss testified there were directional signs, but that he would not be able to testify to that himself, and expressed his belief that the officers who investigated the accident would testify before the hearing officer that there were directional signs in place. Capt. Weiss stated that he believed that Lt. Bobb got distracted and was driving at an excessive rate of speed, and was careless both in speeding and going the wrong way on a one-way street. According to Capt. Weiss, Lt. Bobb should have been familiar with the area as he spent more than one tour with the Fifth District, and, being a police officer, he should be familiar with the sign.
 

 ^Detective Mike Wahl testified that he interviewed the other driver, Wanda Davis, and determined that the vehicles contacted and that the police vehicle rotated and made a second contact with the vehicle driven by Ms. Davis. The police vehicle traveled further and struck a house. Detective Wahl photographed the scene and identified the pictures of Ms. Davis’ view as she approached the intersection revealing that Ms. Davis would be able to see the one-way sign as she approached the intersection, indicating that Lesseps was a one-way street. Detective Wahl did not calculate the speed at which Ms. Davis was traveling at the time of the accident.
 

 Detective Wahl stated that he would have issued a citation to Lt. Bobb for going the wrong way on a one-way street if tickets were issued in an accident with a City vehicle, but that he would not have issued a citation for careless operation. Detective Wahl testified he noted on the report that Lt. Bobb was not distracted, and that Lt. Bobb stated he was traveling at a rate of speed of ten to fifteen miles per hour, which is consistent with trying to
 
 *1056
 
 sneak up on someone conducting a narcotics transaction.
 

 Lt. Bruce Little testified that he was the passenger in Lt. Bobb’s vehicle and was his immediate supervisor on the night of the accident. They received a Code 2 emergency call that indicated that narcotics-related activity was occurring and involved suspects who might possibly be armed. Lt. Little testified that it is the passenger’s job to navigate and when an intersection is approached, tell the driver that the intersection is clear. Lt. Bobb and Lt. Little proceeded to the scene, and Lt. Little told Lt. Bobb to turn once they reached the street Lt. Little guessed to be Lesseps Street. Approaching Lesseps Street from N. Robertson Street, there is no sign indicating the name of the street. Lt. Little testified that there were no street 14signs or traffic control signs at that point, that the area was essentially deserted and unmarked, and that neither he nor Lt. Bobb was aware Lesseps Street was a one-way street until they were at the actual intersection where the accident occurred. According to Lt. Little, Lt. Bobb had been in the Fifth District for only a few months at the time of the accident and it takes several months to become even vaguely familiar with a district. Lt. Little testified, “It was a guess, especially at night, which street you were on, whether you were familiar with the district or not, unless you could recognize a landmark, there was a lot of difficulty of which street is which.”
 

 Lt. Little testified that there were cars parked on both sides of Lesseps Street, facing both lake-bound and river-bound. Lt. Little stated he believed Lt. Bobb bore no culpability due to the lack of street signs and the lack of one-way signs, and said that he did not consider his telling Lt, Bobb to turn onto the street he believed to be Lesseps Street a direct order, but Lt. Bobb should respond unless he deemed the instruction to be unsafe or illegal.
 

 Lt. Bobb testified that, at the time of the accident, he had been in the district only a few months and was not familiar with the area, having had no previous tours with the Fifth District. Lt. Bobb revealed that the district is still in disarray, with houses displaced, signs and street lights down, in the aftermath of the levee failures of 2005. Lt. Bobb stated he was learning the district by using a map, when he was in the car by himself, and by following along with what Lt. Little would tell him when they rode in a vehicle together. The map of the district upon which he relied did not indicate whether streets where one- or two-way, and he did not know Lesseps Street was a one-way street because he was not familiar with the district. Lt. Bobb stated that he listened to Lt. Little because he believed that Lt. Little |Bknew the district, and also noted that “[tjhere was no lighting. It was dark, but there was no street lighting.”
 

 Lt. Bobb admitted that even on one-way streets, it is common for cars to be parked on both sides of the street, facing in either direction, in the Fifth District, and stated that he was focused on driving and finding the suspected narcotics subject. Lt. Bobb contradicted Captain Weiss’ testimony that he had told the captain that he had tunnel vision. Lt. Bobb testified he did not have any distractions the night of the accident, “except for it was dark, but there were no distractions, per se.”
 

 Lt. Bobb denied that he was speeding, claiming that he was driving at a speed of ten to fifteen miles per horn* to insure that the perpetrator does not pass by unnoticed by the police. Lt. Bobb stated the amount of damage resulted from the accident coupled with the vehicle’s having struck the house.
 

 
 *1057
 
 The Commission denied the appeal and upheld the discipline imposed by the NOPD. The Commission determined the officers were “cruising the neighborhood looking for individuals in the area suspected of drug dealing, but they were not in actual pursuit of a suspect.” The Commission further determined:
 

 After reviewing the record we cannot agree with Appellant’s (Lt. Bobb) arguments. Though Appellant is correct that there was no one-way sign at the corner of North Robertson and Lesseps (when he initially made the wrong turn onto Lesseps) he went four blocks down Lesseps before he had the accident and on the corners of two of those four blocks there were one-way signs which should have alerted Appellant that he was going the wrong way.
 

 The Commission has authority to “hear and decide” disciplinary cases, which includes the authority to modify as well as to reverse or affirm a penalty. La. Const, art. X, § 12;
 
 Pope v. New Orleans Police Dept.,
 
 04-1888, p. 5 (La.App. 4 Cir. 4/20/05), 903 So.2d 1, 4. The Commission has the duty to decide | (¡independently from the facts presented whether the appointing authority has good and lawful cause for taking the disciplinary action.
 
 Razor v. New Orleans Police Dept.,
 
 04-2002, p. 3 (La.App. 4 Cir. 2/15/06), 926 So.2d 1, 4. The appointing authority is charged with the operation of its department and it is within its discretion to discipline an employee for sufficient cause. The Commission is not charged with such discipline. The authority to reduce a penalty can only be exercised if there is insufficient cause for imposing the greater penalty.
 
 Pope, supra,
 
 04-1888, at 5-6, 903 So.2d at 4.
 

 The appointing authority has the burden of proving, by a preponderance of the evidence, that the complained of activity or dereliction occurred, and that such dereliction bore a real and substantial relationship to the efficient operation of the appointing authority.
 
 Cure v. Dept, of Police,
 
 07-0166, p. 2 (La.App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094,
 
 citing Marziale v. Dept, of Police,
 
 06-0459, p. 10 (La.App. 4 Cir. 11/8/06), 944 So.2d 760, 767. The civil service system protects civil service employees only from firing or other discipline without cause. La. Const, art. X, § 12;
 
 Cornelius v. Dept, of Police,
 
 07-1257, pp. 5-6 (La.App. 4 Cir. 3/19/08), 981 So.2d 720, 724.
 

 The decision of the Commission is subject to review on any question of law or fact upon appeal to this court, and this court may only review findings of fact using the manifestly erroneous/clearly wrong standard of review. La. Const, art. X, § 12;
 
 Cure v. Dept, of Police, supra,
 
 07-0166 at p. 2, 964 So.2d at 1094. In determining whether the disciplinary action was based on good cause and whether the punishment is commensurate with the infraction, this court should not modify the Commission order unless it was arbitrary, capricious, or characterized by an abuse of discretion.
 
 Id. A
 
 decision of the Commission is “arbitrary and 17capricious” if there is no rational basis for the action taken by the Commission.
 
 Cure,
 
 07-0166, p. 2, 964 So.2d at 1095.
 

 Lt. Bobb argues that the Commission committed legal error by failing to exercise properly its constitutional duty to review independently the facts and circumstances of this ease to determine if lawful cause existed to impose discipline. Lt. Bobb’s second and third assignments of error also address whether or not the Commission acted arbitrarily and capriciously in determining that cause existed to impose discipline.
 

 
 *1058
 
 In this instance, the NOPD imposed discipline, finding Lt. Bobb drove carelessly and against traffic. The NOPD further charged in its disciplinary letter that, “the operator shared a portion or all the responsibility for the accident/incident, in which the operator of the department vehicle has disregarded laws and policies governing traffic laws and/or safe driving practices.” The NOPD bore the burden of proving these charges.
 

 In support of this assignment of error, Lt. Bobb first points to the Commission’s statement that he and Lt. Little were “cruising the neighborhood looking for individuals in the area suspected of drug dealing, but they were not in actual pursuit of a suspect.” Lt. Little testified they received a Code 2 call, which is an emei'-gency-type call, and in this instance, the call indicated that narcotics-related activity was occurring and involved suspects that might possibly be armed. We agree that the NOPD presented no evidence that Lt. Bobb and Lt. Little were “cruising the neighborhood.” However, the Commission’s mischaracterization of the testimony does not bear on whether or not the NOPD proved the charges contained in the disciplinary letter.
 

 | sNext, Lt. Bobb contends that the Commission ignored the testimony and evidence regarding the lack of signs warning Lt. Bobb that he was traveling in the wrong direction. Lt. Bobb notes the Commission cited transcript pages 74-75, wherein the hearing officer stated:
 

 I want to clear this up for the Commission, because during this break we were able to find out some things, and that is that between Robertson and Marais there are four intersections, okay. That’s fact. And whatever could have been testified to before, because we have a report from another supervisor that we know for a fact that there were no directional signs at Robertson and Lesseps and that there are signs, one-way signs, at the other intersections. And my contention here, too, is that if you are going the wrong way you are not going to see them anyway because they are for people going the right way. But the other intersections did have directional signs, but where the appellant (Lt. Bobb) turned there were no signs. And this was very late, very dark, very few street lights, and we’ve got pictures in the record. This is all for the Commission to determine and look at, okay. But there are four intersections, and the other intersections had some controls for people who were driving the right way.
 

 First, we note that there is no identification of the supervisor who provided this alleged report. Further, the alleged report of the unknown supervisor was not properly and officially introduced into evidence. In
 
 City of New Orleans v. Young,
 
 08-0653, 08-0654, pp. 2-3 (La.App. 4 Cir. 11/12/08), 999 So.2d 49, 50,
 
 citing Denoux v. Vessel Management Services, Inc.,
 
 07-2143, p. 6 (La.5/21/08), 983 So.2d 84, 88, this Court noted that “evidence not properly and officially introduced cannot be considered, even if physically placed in the record.” In this instance, the report of the unknown supervisor was not placed into the record. Furthermore, the hearing officer’s conclusion concerning the evidence and testimony is not evidence properly and officially introduced at trial.
 

 The properly introduced evidence and sworn testimony indicate that the only directional signs were located at the intersection of Lesseps Street and Marais Street. Capt. Weiss twice indicated that the testimony of the investigating officers |9was required to determine what, if any, directional signs were present on Lesseps Street
 

 
 *1059
 
 The investigating officer, Detective Wahl, testified that there were no one-way-signs at the intersections along Lesseps Street from N. Robertson Street to Marais Street The accident occurred at the intersection of Lesseps Street and Marais Street Lesseps Street runs in a north-south direction and Marais runs in a west-east direction. A one-way sign is located on the western side and the eastern side of Lesseps Street The one-way signs are placed to warn drivers proceeding upon Marais Street that Lesseps Street is a one-way street. Lt. Little also testified that there were no street signs or traffic control signs, and said that neither he nor Lt. Bobb were aware that Lesseps was a one-way street until they were in the actual intersection where the accident occurred.
 

 Additionally, Detective Wahl and Lt. Bobb testified that it was dark at the time of the accident and that there were hardly any functioning lights. The vehicle’s lights illuminated what was directly in front of the vehicle. In the event that signs would have been located at intersections prior to Marais Street, those signs would not necessarily have been seen by Lt. Bobb or Lt. Little due to the lack of lighting. Any one-way signs at the intersection were not intended to warn those proceeding upon Lesseps Street that they were on a one-way street. Those signs were directional signs for vehicles approaching Lesseps Street, not those traveling upon Lesseps Street
 

 Also, the Commission concluded Lt. Bobb “drove the police car
 
 four blocks
 
 the wrong way down Lesseps Street until it collided with a car having the right-of-ways proceeding down Marais Street.” (Emphasis supplied in the original.). However, a review of the Fifth District map admitted into evidence reveals that Lt. |1()Bobb could have traveled no more than three blocks when his car collided with the vehicle driven by Ms. Davis. From N. Robertson Street to N. Villere Street is the first block; from N. Villere Street to Urquhart Street is the second block; and from Urquhart Street to Ma-rais Street is the third block.
 

 Furthermore, Capt. Weiss stated Lt. Bobb, being a police officer, should be more familiar with the signs indicating that he might possibly be going up a one-way street the wrong way. The Commission cited no testimony or evidence in the record to support the conclusion that Lt. Bobb should have known that Lesseps Street was a one-way street. Indeed, the evidence and testimony show that there were no directional signs along Lesseps Street until the intersection with Marais Street. There were only a handful of cars and those cars were parked on both sides of the street and were parked facing both directions. The only light was provided by the police car’s headlights. Our review of the record reveals no evidence that would have indicated to Lt. Bobb that he was traveling the wrong-way down a one-way street. Capt. Weiss stated Lt. Bobb should have been familiar with the area as he spent more than one tour with the Fifth District. However, that conclusion is contradicted by the testimony of both Lt. Little and Lt. Bobb that Lt. Bobb was, at the time of the accident, in the first few months of his first tour in the Fifth District.
 

 Moreover, Lt. Little and Lt. Bobb testified that Lt. Bobb was traveling at ten to fifteen miles per hour. Detective Wahl, Lt. Little, and Lt. Bobb revealed such a speed is necessary to “sneak up” on a person suspected of conducting a narcotics transaction. Indeed, the NOPD presented no evidence that Lt. Bobb was speeding.
 

 In this instance, the NOPD did not offer credible evidence that Lt. Bobb operated the police vehicle in a careless manner.
 
 *1060
 
 Therefore, we find there is no rational basis for the decision of the Commission denying Lt. Bobb’s appeal of the _J_y careless operation charge. Although Lt. Bobb drove the wrong way down a one-way street, the NOPD did not offer credible evidence that Lt. Bobb disregarded the laws in so doing. The NOPD assigned Lt. Bobb to the Fifth District just a few months prior to the accident. He testified that he was not very familiar with the district. Lt. Little testified it normally takes several months to become vaguely familiar with a district. It should also be noted that Lt. Bobb started his assignment in the Fifth District in the aftermath of the 2005 levee failures, in the course of which the Fifth District received severe and devastating damage. More than two years later, the area still lacked street lights and street and directional signs. Lt. Bobb testified that he attempted to familiarize himself with the district and utilized a map when not with Lt. Little to learn the area covered by the Fifth District. However, the map did not indicate one-way streets. Considering the state of the Fifth District at the time of the incident, it is understandable that Lt. Bobb was not sufficiently familiar with the area to know which streets were one-way. Therefore, we find there is no rational basis for the decision of the Commission denying Lt. Bobb’s appeal to the Commission regarding the charge of driving against traffic. Therefore, we are compelled to conclude that the Commission acted arbitrarily and capriciously in denying Lt. Bobb’s appeal. Considering this finding, Lt. Bobb’s fourth assignment of error is moot.
 

 Accordingly, the decision of the Commission is reversed.
 

 REVERSED AND RENDERED.