McKAY, C.J.,
Dissents With Reasons.
|-i The appointing authority has the burden of proving, by a preponderance of the evidence, that the complained of activity or dereliction occurred, and that such dereliction bore a real and substantial relationship to the efficient operation of the appointing authority. Cure v. Dept. of Police, 07-0166, p. 2 (La.App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094, citing Marziale v. Dept. of Police, 06-0459, p. 10 (La.App. 4 Cir. 11/8/06), 944 So.2d 760, 767. The burden of proof on appeal to the Civil Service Commission is on the appointing authority. Cure, 07-0166, p. 2, 964 So.2d at 1094. The decision of the Civil Service Commission is subject to review on any question of law or fact upon appeal to this Court, and this Court may only review findings of fact using the manifestly erroneous/clearly wrong standard of review. La. Const, art. X, § 12(B); Cure, 07-0166, p. 2, 964 So.2d at 1094. In determining whether the disciplinary action was based on good cause and whether the punishment is commensurate with the infraction, this Court should not modify the Civil Service Commission determination unless it is arbitrary, capricious, or | ¡.characterized by an abuse of discretion. Id. A decision by the Civil Service Commission is “arbitrary and capricious” if there is no rational basis for the action taken by the Civil Service Commission. Id. Although the Commission’s factual findings may not be modified absent manifest error, the review of procedural decisions and questions of law falls within this Court’s traditional plenary function. As such, we are not limited to abuse of discretion or arbitrary and capricious standards of review in these instances. Perkins v. Sewerage and Water Bd., 95-1031 (La.App. 4 Cir. 2/29/96), 669 So.2d 726, 727.
In the instant case, Capt. Brisset testified that she received a citizen complaint about a burned car and body behind the levee. She further testified that it was a general complaint without any indication from the complainant that the incident involved police misconduct. She contacted Capt. Curóle because she knew that the PIB was operational and there was no other investigative structure in place to investigate the matter. She further testified that she told the appellant she had contacted Capt. Curóle regarding the complaint because the appellant was working in the area where the incident occurred. Capt. Brisset testified that the appellant then volunteered to contact Capt. Curóle with information regarding the incident. The appellant testified that he relayed the information he received from Capt. Brisset to Capt. Curóle and also informed Capt. Curóle that he had previously ordered the body moved to the other side of the levee. Capt. Curóle did not testify; the appointing authority offered Capt. Curole’s statement, wherein he acknowledged that the appellant contacted him and informed him of a complaint of |sa dead body behind the levee and that the appellant also related to him what had occurred at the Habans School. Capt. Curole’s statement further indicated that he did not recall being informed that the body had been burned, nor did he recall speaking to Capt. Brisset.
The appellant testified that Capt. Curóle had already been advised of the body behind the levee by Capt. Brisset. This testimony was supported by the testimony of Capt. Brisset. When the appellant contacted Capt. Curóle to provide additional information regarding how the body came to be located on the other side of the levee, he did not know that the body had been burned by Officer McRae and he believed that all relevant facts (including that the body had been burned) had already been conveyed to Capt. Curóle by Capt. Brisset. *750 He only became aware of those facts some three and a half years later.
Based on its investigation, the appointing authority determined that the appellant neglected his duty by failing to report police misconduct in timely fashion and he was terminated. When the appellant appealed his termination to the Civil Service Commission, it was incumbent on the Commission to determine whether his actions constituted violations of the appointing authority’s internal rules and, if so, whether the appellant provided sufficient explanation to justify, excuse, or mitigate his conduct. From my review of the record, it is not clear that the Commission made such a determination.
In Garrity v. New Jersey, 385 U.S. 498, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), a police officer during an Attorney General investigation was told that any ^statement he made might be used against him in a criminal proceeding and that he had the privilege to refuse to answer, but that such refusal would subject him to forfeiture of office. He answered, and his answers were used over objection in a subsequent prosecution. The Court excluded the evidence, holding that a state cannot use the threat of discharge to secure incriminating statements from an employee, even a policeman. In that case, Justice Douglas states that “policemen, like teachers and lawyers, are not relegated to a watered-down version of constitutional rights.” Id.
In Gardner v. Broderick, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968), a policeman was discharged because he refused in a grand jury investigation to waive immunity from prosecution based on his answers, after being told that he would .be discharged if he did not sign the waiver. Observing that the officer was presented with a choice between surrendering his constitutional rights or his job, the Court held that a state cannot discharge an employee for refusing to waive a constitutionally guaranteed right. The Court noted, however, that a policeman owes his entire loyalty to the state and that the privilege would not bar his dismissal for refusal to answer questions relating specifically, directly and narrowly to his official duties, if he were not required to waive immunity with respect to use of the answers or the fruits thereof in a subsequent criminal prosecution.
In the instant case, the appellant contacted his attorney, Mr. Hessler, after Lt. Scheuermann told him that Officer McRae had burned Mr. Glover’s body; Lt. | r,Scheuermann also told the appellant that he thought that the appellant was aware of this fact. Mr. Hessler advised his client to remain silent unless compelled to give an administrative statement or until immunity could be obtained. From May of 2009 until the day of the appellant’s testimony in federal court in December of 2010, no compelled statements were requested by the NOPD. It was only after the appellant’s testimony in the Warren case that the NOPD began an administrative investigation and compelled a statement from the appellant. Thereafter, the NOPD alleged the appellant had violated department policy regarding neglect of duty and professionalism. The appellant was terminated as a result. After his termination, the appellant appealed to the Civil Service Commission. During the pendency of this appeal, the hearing examiner’s report found that the appellant “reasonably relied upon the advice of counsel” and that the “facts and circumstances” of this situation “were such that one could not reasonably have expected him to disregard advice of counsel based on his experience as a police officer.” However, the Commission disagreed and it denied the appellant’s appeal.
The appellant reasonably feared that Lt. Scheuermann’s assertion that he informed *751 the appellant immediately after the event happened could mistakenly implicate him in a conspiracy, cover up or other crime. The appellant’s attorney advised his client that it would be prudent to remain silent and not provide potentially incriminating information against himself. This advice was based on his attorney’s experience with these types of investigations and the large net that was cast by the federal government regarding the events surrounding the death of Mr. Glover. His attorney feared that like in the Garrity case, any statement the appellant made would likely be used against him in a criminal prosecution.
The appellant was not aware that Officer McRae had burned Mr. Glover’s body until May of 2009 when Lt. Scheuermann informed the appellant that Officer McRae had burned the body and told the appellant that he thought the appellant was aware of that fact. However, when he was first questioned about the body in the car behind the Fourth District Station by Capt. Brisset, the appellant volunteered to contact Capt. Curóle and tell him what he knew. It was only in May of 2009 that the appellant became aware of police officer misconduct regarding the events surrounding the death of |aMr. Glover and upon the advice of his attorney chose to remain silent. There is no indication that the appellant had any knowledge of these events before May of 2009 or that he engaged in any police misconduct himself. In any event, the NOPD was already aware that Officer McRae had allegedly burned Mr. Glover’s body before the appellant ever learned these details from Lt. Scheuermann.
The appellant’s attorney advised his client to invoke his Fifth Amendment privilege against self-incrimination and not to report the conversation. In Gardner v. Broderick, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968), the Supreme Court held that a state cannot discharge an employee for refusing to waive a constitutionally guaranteed right. However, that is exactly what happened in the instant case. The appellant was never directly asked about his knowledge regarding the burning of Mr. Glover’s body until after he testified in the Warren |7case. Furthermore, the appointing authority failed to establish that its termination of the appellant was based on good cause or that the punishment was commensurate with the alleged infraction. Accordingly, the Civil Service Commission’s denial of the appellant’s appeal was manifestly erroneous and arbitrary and capricious. I would reverse the Commission’s judgment and order that the appellant be reinstated at his former rank, with entitlement to back pay and all other emoluments of employment from the date of his termination.