681 So.2d 6 (1996)
André NEFF
v.
CITY PLANNING COMMISSION.
No. 95-CA-2324.
Court of Appeal of Louisiana, Fourth Circuit.
September 11, 1996.
Writ Denied December 6, 1996.
*7 Gilbert R. Buras, Jr., New Orleans, for Plaintiff/Appellee, André Neff.
Avis Marie Russell, City Attorney, Annabelle H. Walker, Deputy City Attorney, Marvin E. Robinson, Assistant City Attorney, New Orleans, for Defendant/Appellant the City of New Orleans.
Before LOBRANO, LANDRIEU and MURRAY, JJ.
MURRAY, Judge.
New Orleans' City Planning Commission (the Planning Commission) appeals a decision of the Civil Service Commission for the City of New Orleans (the CSC) reinstating André Neff to his position as a Senior City Planner with full back pay and emoluments. The CSC found that, "based on the evidence in the record, the Appointing Authority has not carried the burden of proof.... No offense worthy of termination has been documented by credible evidence in this record; a general recitation of charges will not do." The Planning Commission contends that because "an overwhelming amount" of uncontradicted evidence establishes Mr. Neff's insubordinate conduct and incompetence as well as the detrimental effect he had on the Commission's efficiency, the CSC's reversal of its termination action was arbitrary, capricious and a clear abuse of discretion. However, we agree with the CSC's assessment of the record and thus affirm the decision below.
An employee who has gained permanent status in the classified city civil service cannot be subjected to disciplinary action by his employer except for cause expressed in writing. La. Const. art. X, § 8(A). An employee such as Mr. Neff may appeal disciplinary action taken against him to the CSC. Id.; La.Rev.Stat. Ann. § 33:2424. On appeal, the CSC has a duty to decide if the appointing authority has good or lawful cause for taking the disciplinary action and, if so, whether the punishment imposed is commensurate with the offense. Walters v. Department of Police, 454 So.2d 106 (La. 1984); Lentz v. Department of Police, 94-0814, p. 1 (La.App. 4th Cir. 11/30/94), 646 So.2d 518, 519, writ denied, 94-3135 (La.3/10/95), 650 So.2d 1177. The appointing authority has the burden of proving by a preponderance of the evidence not only that the complained-of conduct occurred, but that it impaired the efficient operation of the governmental entity. Barquet v. Department of Welfare, 620 So.2d 501, 505 (La.App. 4th Cir.1993).
An appellate court's function in reviewing civil service cases was recently set forth by our Supreme Court as follows:
First, as in other civil matters, deference will be given to the factual conclusions of the [CSC]. Hence, in deciding whether to affirm the [CSC's] factual findings, a reviewing court should apply the clearly wrong or manifest error rule prescribed generally for appellate review....
* * * * * *
Second, in evaluating the [CSC's] determination as to whether the disciplinary action is both based on legal cause and commensurate with the infraction, the court should not modify the [CSC's] order unless it is arbitrary, capricious, or characterized by abuse of discretion. "Arbitrary or capricious" means the absence of a rational basis for the action taken.
* * * * * *
[D]isciplinary action against a civil service employee will be deemed arbitrary and capricious unless there is a real and substantial relationship between the [employee's] *8 improper conduct and the "efficient operation" of the public service.
Bannister v. Department of Streets, 95-0404, p. 8 (La.1/16/96), 666 So.2d 641, 647 (citations omitted).
The record presented here shows that Mr. Neff had been employed by the City since August 1974 and had no record of prior disciplinary action. However, after Kristina Ford became Executive Director of the Planning Commission in December 1992, she issued increasingly critical memoranda concerning Mr. Neff's work. In the latter part of 1993, Mr. Neff was limited to working on two specific projects unless told otherwise by Ms. Ford or the Assistant Director, and was given a performance rating of "Needs Improvement" for 1993.
Before his 1993 performance rating became final, Mr. Neff was notified by letter on May 5, 1994 of the Planning Commission's intent to terminate his employment because of continued insubordination, unsatisfactory productivity and ignoring constructive criticism. A pre-termination hearing was held by Ms. Ford on May 9, after which Mr. Neff was orally informed that he was fired effective at 5:00 p.m. on May 19, 1994. The Planning Commission ratified the Executive Director's decision at a subsequent meeting. In an eight-page letter dated May 25, 1994, with forty-four pages of documentation attached, Ms. Ford detailed the reasons for the termination. Mr. Neff appealed his dismissal to the CSC, and testimony and evidence were presented to a CSC hearing officer on September 14, 1994 and February 1, 1995.[1]
Despite these two opportunities to support the action it had taken, the Planning Commission presented only the conclusory testimony of Kristina Ford that Mr. Neff was insubordinate and incompetent. This testimony was consistent with Mr. Neff's termination letter, which, together with the attached documentation, was included in the record for review. Ms. Ford testified about only one specific act that she considered insubordinate: Mr. Neff, who had been restricted to working on only two specific projects, left the office on one occasion to make a field inspection on one of his former assignments.
Similarly, although the attachments to the termination notice refer repeatedly to alleged professional incompetence, Ms. Ford provided minimal testimony to explain the nature of the deficiencies in Mr. Neff's work product. Ms. Ford testified that her employees "were treated I would say in ways that were commensurate with being students of mine if I was a college professor." She and the Assistant Director, Elrhei Thibodeaux, would read reports by staff members "as if they were college term papers," making comments and correcting grammar because she "wanted them to achieve a higher level of analysis than there was when I first came there." Ms. Ford briefly testified on cross examination regarding comments she had written on one of Mr. Neff's draft reports on a project.[2] She, however, did not discuss specific inadequacies or present a satisfactory report for comparative purposes. Absent such testimony it is difficult to discern professional competence from reading of the documentation.
The testimony concerning the effect of Mr. Neff's conduct on the Planning Commission's efficiency also was sparse. Ms. Ford stated that Mr. Neff's insubordination undermined her authority, and that his failure to produce timely and acceptable written reports affected her ability to meet presentation deadlines set by the City Council. She, however, cited no specific instances of such problems. On cross-examination, she conceded that one of the two projects assigned to Mr. Neff later was determined to be within the scope of another agency's expertise and thus allowed to die "a natural death" after he was terminated. She also acknowledged that she "did not waste her time" reading Mr. Neff's final *9 report on the other project because the Assistant Director advised her it contained nothing new. She testified that this project has been re-assigned, but expressed no concern that no subsequent report had been prepared as of September 1994.
In contrast to Ms. Ford's testimony, Mr. Neff and two of his former co-workers[3] testified that they had great difficulty in determining what Ms. Ford expected of them. They stated that her instructions were usually indirect and her notes on written reports were generally argumentative and belittling. In addition, they found that Ms. Ford tended to become more aggressive each time she reviewed such reports, complicating the employees' attempts to discover the corrections or alterations she desired. In the opinion of one of these witnesses, who had worked with Mr. Neff for ten years, Ms. Ford's demands on one project called for the analysis of an economist, something beyond Mr. Neff's education or experience.
Considering both the lack of testimony interpreting the documentation submitted as well as the testimony concerning Ms. Ford's methods of instruction and supervision, the CSC reasonably could conclude that the termination of Mr. Neff's employment was unjustified. As the CSC opinion noted, Mr. Neff was a nineteen-year City employee with no prior disciplinary history, and the Planning Commission presented no evidence that his work previously had been found to be inadequate.[4] Testimony suggested that other long-time employees, not just Mr. Neff, found Ms. Ford's attempts to issue corrective criticism vague and not conducive to a satisfactory response. Although the documents attached to the termination notice can be considered written reprimands, without adequate explanation of Mr. Neff's technical deficiencies or further evidence of the alleged insubordination, the "jump" to immediate dismissal, rather than a lesser form of discipline, appears unsupported.[5] Thus, because there is a rational basis for the CSC's determination that the Planning Commission had not proven lawful cause for terminating Mr. Neff's employment, the decision cannot be seen as arbitrary or capricious and must be affirmed.
Mr. Neff has answered this appeal, arguing that he is entitled to an award of both costs and attorney's fees because the Planning Commission's frivolous appeal was asserted only for purposes of delay. This court is empowered to award attorney fees under Article 2164 of the Code of Civil Procedure. However, "[a]ppeals are always favored and, unless the appeal is unquestionably frivolous, damages will not be allowed." Hampton v. Greenfield, 618 So.2d 859, 862 (La.1993) (citation omitted). Attorney fees are not awarded to a prevailing party unless the intent to delay is obvious or the arguments made cannot be seen as sincere. Id. As this provision is penal in nature it must be strictly construed. Elloie v. Anthony, 95-0238, p. 3 (La.App. 4th Cir. 8/23/95), 660 So.2d 897, 899, writ denied, 95-2239 (La.11/27/95), 663 So.2d 731. Although Mr. Neff contends that this appeal was intended merely to delay his return to his position, he offers no evidence of this, and it appears that the Planning Commission was sincere in its belief that its documentation would support its action. Accordingly, we decline to award attorney fees to Mr. Neff. Rather, we cast the Planning Commission, as losing party, for all costs of this appeal.
AFFIRMED.
NOTES
[1] At the first hearing, the Planning Commission's evidence was limited to the time period following a thirty-day suspension which had been nullified because Ms. Ford did not seek ratification by the full Commission. The CSC found this limitation erroneous and therefore remanded the matter for the second hearing.
[2] The document submitted to this court as exhibit Appellant #2 to the February 1, 1995 transcript contains none of the comments discussed during Ms. Ford's testimony about this exhibit.
[3] Both resigned from the Planning Commission subsequent to Mr. Neff's termination; one had been Mr. Neff's immediate supervisor for several months in 1993.
[4] Although the former Executive Director of the Planning Commission appeared as a witness at the second hearing, the City Attorney withdrew the witness before any substantive testimony was taken.
[5] We note that Ms. Ford considered the thirtyday suspension to have been a step in progressive discipline of Mr. Neff, despite its invalidation, because the Planning Commission "unanimously upheld a motion which stated ... they would have ratified it."