JAMES F. McKAY III, Chief Judge.
hln this civil service case, the New Orleans Police Department (NOPD) appeals a judgment of the Civil Service Commission of the City of New Orleans, granting the appeal of Jerome Laviolette and ordering that he be returned to his former position with all back pay and emoluments of office. We affirm.
FACTS AND PROCEDURAL HISTORY
At the time of the facts giving rise to this case, Jerome Laviolette was employed as a Captain by the NOPD and had attained permanent status. Captain Laviol-ette injured his back in 2008 while off duty and was diagnosed with bulging discs, likely resulting from degenerative joint disease. He reinjured his back on April 20, 2011, again while off duty. Captain La-violette’s physical ailments necessitated that he go out on sick leave from May 2011 through February 2012. While Captain Laviolette was out on sick leave, he was under a doctor’s care and he submitted ten properly filled out Form 50’s.[1] As a twenty-seven (27) year veteran of the NOPD, Captain Laviolette had accrued ample sick leave.
|2In January of 2012, Captain Laviolette was informed by his treating neurosurgeon, Dr. Donald Dietz, that Dr. Dietz would no longer be providing services to patients covered by United Healthcare. This required that Captain Laviolette find a new specialist who would accept his insurance. However, on March 28, 2012, Captain Laviolette received notice of a Pre-Termination (Rule IX) Hearing.
On March 28, 2012, Captain Laviolette appeared at the Rule IX Hearing presided over by Deputy Superintendent Stephanie Landry. He provided records of his treatment and physical therapy. During the hearing, Captain Laviolette indicated that he was ready and willing to return to work when he was medically cleared to do so, but that he could not get the Form 50 to do so until May of 2012, when he was to be evaluated by his new doctor.[2] However, on the following day, Captain Laviolette was terminated by the NOPD. After being separated from the NOPD, Captain *965 Laviolette’s treating physician cleared him to return to full duty in June of 2012.
Captain Laviolette timely filed an appeal with the Civil Service Commission alleging that his termination was arbitrary and capricious and without just legal cause. A Civil Service Hearing took place before a Hearing Examiner on July 5, 2012. Following the hearing, the Hearing Examiner issued a report to the Civil Service Commission. The report opined that the appointing authority failed to meet its burden of proof showing that Captain La-violette was unwilling to return to work, and noted that Captain Laviolette indicated that he would be able to return to Lwork in the foreseeable future. The Civil Service Commission agreed with the Hearing Examiner and ordered that Captain Laviolette’s appeal be granted and further ordered that he be returned to his previous position with all back pay and emoluments of his prior employment. The appointing authority appealed this judgment.
On March 11, 2015, this Court vacated the Civil Service Commission’s judgment as procedurally improper and remanded the case for further proceedings. Laviolette v. Department of Police, 2013-1608 (La.App. 4 Cir. 3/11/15), 163 So.3d 96. On November 11, 2015, the Civil Service Commission issued a new decision in this matter. The Commission granted Captain La-violette’s appeal and ordered that he be returned to his previous position with all back pay and emoluments of employment.[3] It is from this judgment that the NOPD now appeals.
DISCUSSION
On appeal, the NOPD raises the following assignments of error: 1) the Civil Service Commission’s ruling in this matter issued on November 11, 2015 is contrary to the evidence and testimony presented in this matter and contrary to the law; 2) the Civil Service Commission’s ruling issued on November 11, 2015 is arbitrary and capricious, as there was no review' of the record, testimony or evidence by the five Commissioners signing the ruling, nor was there any independent analysis; 3) the Commission erred in finding that there were no material facts in dispute, by ignoring the documents presented by the appointing authority which Captain Laviol-ette produced on March 28, 2012, and accepting an |4untimely, conditional Form 50 completed three months after the NOPD’s pre-termination hearing as proof that Captain Laviolette could return to full duty, when the form stated only may “return to work as tolerated”; 4) the Commission erred in finding that Captain Laviolette was entitled to remain out on sick 'leave for over a year, without limits or control by the appointing authority, simply because the officer had accrued leave on account; 5) the Commission erred in finding that the department was required to allow Captain Laviolette to return to work in light duty status, when the department advised that they have no permanent light duty status positions; 6) the Commission erred in finding that the department was required to accept Captain Laviolette’s contention that he was “willing” to return to work if authorized by his physicians, because no physician authorized his return to full duty, and Rule IX requires that em *966 ployees be both willing and “able” to perform their duties; 7) the Commission erred in finding that the appointing authority failed to meet its burden for involuntary retirement, when the appointing authority presented a year’s worth of Form 50’s from Captain Laviolette’s treating physician, submitted by Captain La-violette at the pre-termination hearing, which confirmed that Captain Laviolette was unable to return to work in any capacity and which did not include indication of any ongoing treatment or any future date on which he would be able to return to full duty; 8) the Commission erred in finding that the department was required to continue the pre-termination hearing, based upon Captain Laviolette’s claim that he might be able to see a new doctor sometime 2 to 3 months in the future, when he did not identify any “new doctor” by name, -had no scheduled appointment, and offered no indication or explanation for believing that a new doctor’s findings would contradict those of his treating physicians for .the past three years; 9) the Commission erred in finding that the | ^department was required to accept a Form, 50 submitted three months after the Rule IX Medical Pre-termination hearing and involuntary retirement action which did not state that the officer could return to full duty, but rather stated he could return to work “as tolerated now”; 10) the Commission erred, in substituting its opinion for that of the department, improperly usurping the department’s authority to manage its personnel and resources; 11) the Commission erred in ignoring the impact on the appointing authority of Captain Laviolette’s extended absence from work, in particular as there was no improvement in over a year and never any anticipated return date, thereby requiring other officers to pick up the duties of Captain Laviolette; and 12) the Commission erred in issuing a ruling on November 11, 2015, without any review of the record, testimony or evidence by the signing Commissioners and with no independent analysis of these new Commissioners who simply signed a reprint of the August 2013 ruling, which itself was not signed by any of the Commissioners on the board at the time the ruling was issued in August of 2013, but rather rubber-stamped with signatures by a Civil Service Clerk.
An employee with permanent status in the classified, city service may only be terminated, or otherwise subjected to disciplinary action, in writing and for good cause. La. Const. art. X, § 8(A); Walters v. Dept. of Police of New Orleans, 454 So.2d 106, 113 (La.1984). Good “cause” for the dismissal of such a person includes conduct prejudicial to the public service involved or detrimental to its efficient operation. Id. The appointing authority has the burden of proving, by a preponderance of the evidence, that the complained-óf activity or dereliction occurred, and that such dereliction bore a real and substantial relationship to the |fiefficient operation of the appointing authority. Cittadino v. Department of Police, 558 So.2d 1311, 1315 (La.App. 4 Cir.1990).
The burden of proof on appeal to the City Civil Service Commission shall be on the appointing authority. Walters v. Dept. of Police of New Orleans, 454 So.2d at 112-113. The decision of the Civil Service Commission is subject to review on any question of law or fact upon appeal to this Court, and this Court may only review findings of fact using the manifestly erroneous/clearly wrong standard of review. La. Const. art. X, § 12(B); Walters, 454 So.2d at 114. In determining whether the disciplinary action was based on good cause and whether the punishment is commensurate with the infraction, this Court should not modify the Commission’s order *967 unless it was arbitrary, capricious, or characterized by an abuse of discretion. Id. A decision by the City Civil Service Commission is “arbitrary or capricious” if there is no rational basis for the action taken by the Commission. Bannister v. Department of Streets, 95-0404, p. 8 (La.1/16/96), 666 So.2d 641, 647.
In the instant case, the NOPD lists twelve assignments of error. The first eleven all deal with allegations that the Civil Service Commission erred in its duty to independently decide, based on the facts, evidence and testimony receivéd, whether or not the appointing authority had good or lawful cause for termination of Captain Laviolette. The final assignment of error concerns an alleged procedural violation, contending that the judgment is improper, and thus invalid.
.We will first address the issue of whether the Civil Service Commission erred in its duty to independently decide based on the facts, evidence and testimony received whether or not the appointing authority had good or lawful cause for termination of Captain Laviolette. As stated above, the burden of proof 17on this issue is on the appointing authority. See Walters at 112-113. In order to prevail, the appointing authority must establish by a preponderance of the evidence that Captain Laviol-ette was either unwilling or unable to perform his duties as a police captain. See Marziale v. Department of Police, 2006-0459 (La.App. 4 Cir. 11/8/06), 944 So.2d 760.
Marziale, an NOPD officer with nearly thirty years or service was injured and unable to return to work. Id. He underwent medical treatment and physical therapy for three years until he was terminated by the NOPD. Id. The Civil Service Commission upheld his termination. Id. This Court reversed that judgment and held that the appointing authority did not meet its burden of proof at the CM Service hearing that Officer Marziale would not be able to return to full duty. Id. In particular, this Court stated “we are troubled that the appointing authority did not take the steps to determine or establish that Marziale would not be able to resume his duties after successful treatment of his ailments.” Id. at 768.
Likewise, in the instant case, the appointing authority has failed to meet its burden of proof. Captain Laviolette never stated or otherwise indicated that he was unwilling to return to work. To the contrary, a review of the record reveals that Captain Laviolette indicated that he would return to work in the foreseeable future, but that he was delayed because of difficulties with a doctor’s appointment. Further, Captain Laviolette was taking affirmative steps to return to work and had ample sick leave. Most importantly, there was never any medical determination that Captain Laviolette’s injuries would prevent him from returning to work in .the future.
We will now address the appointing authority’s final assignment of error. The Civil Service Commission filed an Amicus Brief addressing the department’s |8final assignment of error as . it directly impacts how the Commission renders judgments and issues decisions. The brief explains that Commissioners serve overlapping terms of six years and convene once per month for regular meetings and that this occasionally poses certain logistical challenges in terms of securing signatures on orders and decisions rendered by the Commission.
On November 11, 2015, the Commission issued a judgment in connection with Captain Laviolette’s appeal before the Commission signed by all five then-sitting Commissioners as successors. The decision explicitly states that it “[was] issued *968 by the undersigned Commissioners in their capacity as successors to the quorum of Commissioners who rendered an earlier judgment in the instant appeal but did not have an opportunity to sign the judgment pursuant to R.S. 13:4209(B)(1).”
La. R.S. 13:4209(B)(1) states:
In cases which are heard and in which judgment is rendered, but not signed, whether the case was taken under advisement or not, if the judge who rendered the judgment dies, resigns, or is removed from office, or if his term expires before signing judgment in the case, his successor in office shall have the authority to sign a judgment which conforms with the judgment rendered.
Therefore, a failure to secure signatures on a judgment does not render a judgment substantively deficient. Rather, such a failure merely creates a procedural flaw that is remedied through securing the proper signatures of the original judge or the signatures of the successor judges pursuant to La. R.S. 13:4209. Otherwise, the Commission would be forced to re-litigate matters that have already been concluded.
By exercising the authority provided for in La. R.S. 13:4209, the Commissioners who signed the November 11, 2015 judgment were not acting in an |9arbitrary and capricious manner. They were adhering to well-established standards for the signing of judgments. Therefore, the ..Civil Service Commission’s judgment of November 11, 2015 was proper and valid.
CONCLUSION
For the above and foregoing reasons, we find no error with the Civil Service Commission’s November 11, 2015 judgment, which ieversed the NOPD’s termination of Captain Laviolette, returned him to duty at his previous rank, and awarded him back pay and all emoluments of employment. Accordingly, we affirm that judgment.
AFFIRMED

. Form 50 is a physician's examination certificate used by the NOPD to document the use of sick leave by an officer.

. After being separated from the NOPD, Captain Laviolette submitted a Form 50 from his new treating neurosurgeon, Dr. Saucier, clearing him to return to full duty in June of 2012.

. This judgment was issued by Michelle D. Craig, Chairperson (11/4/15), Ronald P. McClain, Vice-Chair (10/29/15), Joseph S. Clark, Commissioner (10/28/15), Tania Tet-low, Commissioner (11/2/15), and Cordelia D. Tullous, Commissioner (11/3/15) in their capacity as successors to the quorum of commissioners who rendered an earlier judgment in this case but did not have an opportunity to sign that judgment pursuant to La. R.S. 13:4209(B)(1).