Judge Edwin A. Lombard
_JjThe Appellant, the Department of Property Management for the City of New Orleans (“DPM”), seeks review of the decision of the Civil Service Commission (“Commission”), reversing the termination of the Appellee, Melissa Wilson, Finding that the DPM improperly terminated Ms. Wilson in accordance with the requirements of Civil Service Rule IX, we affirm the decision of the Commission.
Facts
Ms. Wilson, served as “Title Abstractor I” at the Department of Property Management for the City of New Orleans (“DPM”) with permanent status. Ms. Wilson’s primary duties consisted of processing work orders from various other City departments; she was the only person responsible for such task. Specifically,' she entered information from work orders into a spreadsheet, time stamped them, then ensured the completion of the work orders. George Patterson, Director of the |2DPM, expressed that processing work orders is a vital task to the DPM because it is one of the department’s Key Performance Indicators (“KPI”).[1]
In February 2015, Ms. Wilson ceased reporting to work. She later produced physician documentation indicating she would be receiving medical treatment and therefore, could not return to work until her treating physician reassessed, her condition on March 30, 2015. Her treating physician submitted all appropriate paperwork for Family Medical Leave Act (“FMLA”) leave. However, on March 30, 2015, Ms. Wilson failed to return to work. Instead, she produced a second physician’s letter that expressed her inability to return to work until the completion of another medical reassessment on April 13, 2015. Again, Ms. Wilson failed to return to work on the date indicated in the letter. On April 14, 2015, Ms. Wilson produced a third physician’s letter that extended her absentee period until April 28, 2015. The DPM honored all Ms. Wilson’s requests for medical leave.
In Ms. Wilson’s absence, other employees of the DPM aided in processing the work orders; yet, a backlog ensued because they strained to process them. Mr. Patterson testified that this departmental strain became untenable in late April. Consequently, he sought approval from the Civil Service to hire a temporary replacement during Ms. Wilson’s absence. Civil Service rejected his ■ request because the payroll budget could only be accessed to hire Ms, Wilson’s permanent replacement.
On April 28, .2015, Ms. Wilson did not return to work. On May 5, 2015, the DPM notified Ms. Wilson that a pre-termination hearing, would be held due to her inability to return to work. In the DPM’s notifica *147 tion, it expressed that Ms. Wilson ^exhausted all her FMLA leave time and did not submit certification that she could return to work in any capacity from her medical provider.
At the pre-termination hearing, Ms. Wilson produced another physician’s letter, which permitted her return to work with the condition the DPM took precautions for any sudden loss of Ms. Wilson’s balance. On May 15, 2015, the day after the hearing, the DPM terminated Ms. Wilson. Mr. Patterson stated he considered her to be a liability to both the City and his department. Ms. Wilson believed at the time of her termination she still possessed forty-nine (49) days of unused sick leave and nearly two weeks of annual leave.
Ms. Wilson appealed her termination to the Commission, which granted her appeal. On review, the Commission first found that she could not perform the essential functions of her job as of May 15, 2015. Nonetheless, the Commission also ruled that the DPM improperly terminated Ms. Wilson when they did not first permit her to exhaust all her allocated sick and annual leave before her termination. The Commission specifically found that the DPM failed to meet its burden of proof that Ms. Wilson did not submit the proper documentation to justify her absence, permanent disability, or inability to resume her duties at the DPM. Subsequently, the Commission reinstated Ms. Wilson and required the DPM to pay her backpay and emoluments.
The DPM timely filed the instant appeal in this Court, raising two (2) assignments of error:
1. The Commission committed legal error by augmenting the plain language of Civil'Service Rule IX with additional unwritten requirements.
2. The Commission improperly substituted its judgment for the Appointing Authority’s judgment.
^Standard of Review
The Louisiana Constitution bestows the Commission the authority to modify, affirm or reverse all disciplinary actions. La. Const. art. X, § 12; Pope v. New Orleans Police Dep’t., 04-1888, p. 5 (La.App. 4 Cir. 4/20/05), 903 So.2d 1, 4. A permanent status employee in the classified city service must be terminated for good cause expressed in writing. La. Const. art. X, § 8(A); Walters v. Dep’t of Police of New Orleans, 454 So.2d 106, 113 (La. 1984). A good cause for termination exists when the employee’s conduct is detrimental to the efficient operation of the public service. Laviolette v, Dep’t. of Police, 16-0095, pp. 5-6 (La.App. 4 Cir. 8/24/16), 200 So.3d 962, 966 (citing Walters, 454 So.2d at 113). The Appointing Authority must prove a legal cause exist to the Commission. Muhammad v. New Orleans Police Dep’t, 00-1034, pp. 4-5 (La.App. 4 Cir. 7/11/01), 791 So.2d 788, 791 (citing Wilson v. New Orleans Aviation Board, 96-1350, p. 2 (La.App. 4 Cir. 1/15/97), 687 So.2d 593, 595). “Legal cause exists when the employee’s conduct impairs the efficiency of the public service in which the employee is engaged.” Id., 00-1034, p.7, 791 So.2d at 792 (citing Cittadino v. Department of Police, 558 So.2d 1311 (La. App. 4 Cir. 1990)), The Appointing Authority must also prove the “actions complained of bear a real and substantial relationship to the efficient operation of the public service.” Id. (citing Neff v. City Planning Comm’n, 95-2324 (La.App. 4 Cir. 9/11/96), 681 So.2d 6). Both requirements must be proven by a preponderance of the evidence. Id.
This Court must review the Commission’s finding of facts pursuant to the clearly wrong or manifest error standard. Id., 00-1034, pp. 4-5, 791 So.2d at *148 790-791; see also Vara v. Dep’t of Police, 16-0036, p. 5 (La.App. 4 Cir. 6/29/16), 197 So.3d 294, 297. The Commission’s conclusion of “whether the disciplinary | fiaction is based on legal-cause and the punishment is commensurate with the infraction” should be reviewed determining whether the finding is arbitrary, capricious or an abuse of discretion. Id. The Commission’s conclusion is arbitrary or capricious if it lacks a rational basis. Bannister v. Dep’t. of Streets, 95-404 (La. 1/16/96), 666 So.2d 641. Therefore, this Court shall only modify the Commission’s reinstatement of Ms. Wilson if there is no rational basis for the Commission’s ruling.
The Commission’s alleged violation of Civil Service Rule IX
In the first assignment of error, the DPM argues that the. Commission’s order to reinstate Ms. Wilson violated Civil Service Rule IX, Section 1.1, because it created an additional requirement to terminate employees under Rule IX. Specifically, the DPM argues that the Commission misinterpreted Rule IX because Rule IX does not require a department to await an employee’s exhaustion of her accrued sick and/or annual leave before terminating an employee. Civil Service Rule IX, Section 1.1, provides the following:
When an employee in the classified service is unable or unwilling to perform the duties of his/her position in a satisfactory manner, or has committed any act to the prejudice of the service, or has omitted to perform any act it was his/her duty to perform, or otherwise has become subject to corrective action, the appointing authority shall take action warranted by the circumstances to maintain the standards of effective service. The action may include one or more of the following:
(a) termination from the service... .[2]
|RIn support of the argument, the DPM relies on Ramie v. Dep’t of Fire, 617 So.2d 92 (La. App. 4 Cir. 3/30/93), and Muhammad, supra, to establish that the Appointing Authority is authorized to terminate an employee who is unable or unwilling to perform his or her job functions. The Commission’s ruling did not dispute the DPM’s authority to terminate Ms. Wilson, but merely required the DPM to satisfy its burden of proof that Ms. Wilson was either permanently unable or unwilling to perform her job functions.
There are many dissimilarities between the case at issue and Ramie and Muhammad. In Ramie, the employee conceded that he could not perform his duties as a firefighter. He did not know whether he would be able to resume his duties as a firefighter. Ramie, 617 So.2d at 94. Likewise, in Muhammad, the employee admitted he could not return to work. Muhammad, 00-1034, p. 2, 791 So.2d at 789. Also, in Muhammad, the employee’s physician recommended that the, employee not return to work and that the department grant him full and permanent disability. Id. Neither case is factually analogous to the instant case.
Neither Ms. Wilson nor her physician suggests that she is unable to return to work. Although the Commission found that Ms. Wilson was unable to perform the essential functions of her job as of May 15, 2015, it did not rule that she was permanently unable to perform her job functions. Ms. Wilson produced a letter from her physician that permitted her to return to work if the DPM took precautions for any sudden loss of her balance. However, the *149 DPM chose to terminate Ms. Wilson because, as Mr. Patterson, Director of the DPM, testified, the City found her to be a “liability.” There is no Civil Service rule that permits the Appointing Authority to terminate an employee who can, or could eventually, perform his or her job functions but may be a “liability” to the department.
|7Next, the DPM argues that the FMLA does not require the employer to allow an employee to exhaust all his or her available FMLA leave in addition to all remaining sick and annual leave days before termination. The DPM cites the United States Court of Appeals, Eleventh Circuit case, Strickland v. Water Works, 239 F.3d 1199 (11th Cir. 2001), in support of its assertion. However, this case is adverse to the DPIVFs assertion because the court in Strickland stated:
The plain meaning of this regulation [29 C.F.R. § 825.207(f)][3] is that an employee who has an FMLA-qualifying condition may take both 12 weeks of unpaid leave under the Act, plus any paid leave his employer provides unless the employee chooses, or the employer requires, that the two leave entitlements run concurrently.
Id. at 1205 [emphasis added]. Therefore, we find that Strickland supports the interpretation of the FMLA to allow employees to tack on sick and/or annual leave after the exhaustion of FMLA leave.
The DPM next argues that the Commission’s cited legal support is distinguishable from this case and establishes additional requirements of a Rule IX termination. Specifically, the DPM contests that Marziale v. Dep’t of Police, 06-0459 (La.App. 4 Cir. 11/8/06), 944 So.2d 760, and Laviolette, supra, establish that the Appointing Authority must prove that the employee terminated was: 1) unwilling to return to work; 2) would not be able to return to work in the future; or 3) failed to produce documentation justifying the employee’s absences. The DPM asserts that the Appointing Authority only needs to prove the reasons provided in the employee’s termination letter. Therefore, the DPM claims it satisfied this ^requirement because the letter stated, and it was later ruled by the Commission, that Ms. Wilson was unable to perform her position duties at the time of her pre-termination hearing. We disagree.
In Marziale, the employee suffered injuries preventing him from performing his duties as an officer. Marziale, 06-0459, pp. 1-3, 944 So.2d at 762-63. After three years of the employee using his leave due to injuries he sustained, the NOPD terminated him although he indicated his willingness to return to work once medically cleared. Id., 06-0459, p. 9, 944 So.2d at 766. The NOPD’s termination letter specified its reason for termination as being that the employee failed to submit the proper documentation. Id., 06-0459, p. 4, 944 So.2d at 763. For all three years, the employee produced documentation from his physician. Id., 06-0459, p. 2, 944 So.2d at 762-63. The officer submitted a physician letter before the NOPD terminated him, wherein the physician indicated that the officer could return to work in a light duty position. Id., 06-0459, p. 3, 944 So.2d at 762-63. This Court reinstated the employee, holding that the NOPD failed to satisfy its burden of proof to show a good *150 cause to dismiss the officer for unwillingness or inability to perform job functions, or for a failure to submit the proper medical documentation. Id., 06-0459, pp. 13-14, 944 So.2d at 768.
Likewise, in Laviolette,' this Court found that the NOPD did not meet its burden of proof to terminate an officer. Laviolette, 16-0095, p. 7, 200 So.3d at 967. In Laviolette, an officer suffered injuries and as a result could not complete his duties as an officer for nearly a year. Id.,16-0095, p. 1, 200 So.3d at 964. Consequently, the NOPD sent a notification for a pre-termination hearing to the officer. Id. The NOPD later terminated the officer although he indicated a willingness to return to work in two, months after being medically cleared by a new fyphysician. Id. Notably, the officer’s new treating physician cleared him to return to full duty within the two months indicated by the officer. Id., 16-0095, p, 2, 200 So.3d at 964-65. This Court in Laviolette cited the following rule from Marziale: “[i]n order to prevail, the appointing authority must establish by a preponderance of the evidence that Captain Laviolette was either unwilling or unable to perform his duties as a police captain.” Id., 16-0095, p, 7, 200 So.3d at 967 (citing Marziale, supra). Similarly to Marziale, applying the rule stated above, this Court found that the NOPD failed to meet its burden of proof to establish that the officer was either unwilling or unable to return 'to work in the foreseeable future. Laviolette, 16-0095, p. 7, 200 So.3d at 967. This Court also noted that the officer possessed “ample sick leave.” Id. Thus, we find that both Marziale and La-violette provide that an employer seeking to terminate an employee under Civil Service Rule IX must prove that the employee either: 1) is unwilling or unable to perform job functions; or 2) failed to submit the proper medical documentation.
The DPM failed to meet its burden of proof that Ms. Wilson was unwilling or unable to perform job functions, or that she failed to submit the proper documentation. Ms. Wilson indicated her willingness to return to work at her pre-termination hearing. At the hearing, she also provided documentation from her treating physician that she could return to work if the DPM took precautions for her sudden loss of balance. Ms. Wilson submitted all her physician’s documentation, such as the physician letter that allowed her to return to work throughout her absence from work. Therefore, we find that both Marziale and Laviolette are' analogous to this case. We also find that the DPM failed to prove Ms. Wilson to be unwilling or unable to perform her job functions, or that she did not submit the proper documentation for her medical leave,
ImLastly, the DPM argues that Civil Service Rule VIII, Section 2 does not create a duty for city departments to allow employees to exhaust all their sick leave. The DPM specifically argues that no provision or language of Rule VIII supports this position. The DPM further relies on Civil Service Rule VII, Section" 2.5[4] to *151 assert that employees may convert unused sick leave into either cash or retirement credits upon separation. The DPM cites Lafleur v. City of New Orleans, 01-3224 (La. 12/4/02), 831 So.2d 941, to illustrate the process of converting |nunused sick leave prior to retirement.. Lafleur and Section 2.5 are inapplicable in this case because Ms. Wilson neither retired, nor did she plan to retire.
Section 2 does not expressly provide that employers should allow employees to exhaust all their sick leave, but it does imply such a notion. As noted by the Commission, Section 2.2(d)[5] does consider that an employee could use more than thirty (30) days of sick leave.
Nonetheless, Louisiana jurisprudence does expressly provide that employees may exhaust their sick leave before termination. Ziegler v. Department of Fire, 426 So.2d 311 (La. App. 4 Cir. 1/13/83). In Ziegler, the NOFD dismissed a fireman, not permanently disabled, with over one-year of sick leave left before termination. Id. at 313-14. The NOFD reasoned the termination was warranted because the department found it difficult “to
maintain a full force” during the fireman’s absence. Id. at 313. This Court stated “that consideration alone cannot be sufficient to terminate employment if the employee is entitled to take sick leave and is not totally and permanently disabled.” Id. We reinstated the fireman, holding if he could foreseeably return to the fire department, the department must allow him to use all his sick leave before terminating him. Id. at 313-14.
| ^.Likewise, the DPM dismissed Ms. Wilson, an employee that desired to return to work, who was not permanently disabled, and who had unused sick leave remaining before her termination. Additionally, Ziegler is similar to the case at bar because the DPM terminated Ms. Wilson due to the strain the department suffered during her absence. Pursuant to our holding in Ziegler, we find no error in the reinstatement of Ms. Wilson by the Commission. Thus, this assignment of error lacks merit.
The Commission Improperly Substituted its Judgment for that of the Appointing Authority
In its second assignment of error, the DPM argues that the Commission improp *152 erly substituted its judgment for that of the Appointing Authority, which met its burden to terminate Ms. Wilson under Rule IX. The Commission, the DPM avers, agreed that legal cause existed for Ms. Wilson’s termination as she could not perform the duties of her position. Nevertheless, the DPM contends that the Commission abused its discretion in holding that she should not have been terminated until her two months of unused sick/annual leave were exhausted.
The DPM maintains that it showed sufficient cause for Ms. Wilson’s termination by establishing that:
• she was unable to perform the functions of her job on May 15, 2015;
• The DPM was adversely affected by Ms. Wilson’s absence and by not having a dedicated person to process and track work orders, resulting in the DPM being prevented from meeting KPIs; and
• holding her position open past the exhausting of her FMLA leave, impaired the efficient operation of the Department.
11sThe ruling, it argues, was therefore an arbitrary and capricious interference with the DPM’s authority to manage its department. We disagree.
Ms. Wilson was terminated pursuant to Rule IX, Section 1, entitled “Maintaining Standards of Service.” Paragraph 1.1, which states in pertinent part:
When an employee in the classified service is unable or unwilling to perform the duties of his/her position in a satisfactory manner, ... the appointing authority shall take action warranted by the circumstances to maintain the standards of effective service.
As previously stated, the Commission is tasked with not only conducting an independent review of whether there was good or lawful cause for taking disciplinary action, but also reviewing whether the punishment imposed was commensurate with the dereliction. Williams v. Dep’t of Utilities, 03-1473, p. 4 (La.App. 4 Cir. 1/28/04), 867 So.2d 26, 29. In the instant matter, we note that the Commission never stated that, the DPM had good or lawful cause for taking disciplinary action, although it determined Ms. Wilson could not perform “the essential functions of her job as of May 15, 2015.”
Ms. Wilson produced a letter from her physician at her pre-termination hearing indicating that she could return to work on May 18, 2015, “with precautions for sudden loss of balance.” The Commission also considered that Ms. Wilson expressed at the hearing that she desired to return to work. Thus, the Appointing Authority was unable to show that Ms. Wilson would not be able to resume her duties after treatment or in the foreseeable future to carry its burden of proof. Laviolette, 16-0095, p. 7, 200 So.3d at 967. Lastly, the Commission recognized that Ms. Wilson, as a long-term civil service employee, had accumulated a substantial amount of sick and annual leave time that she was |14entitled to exhaust while she recovered from her documented illness pursuant to our holdings in Ziegler, supra, and Brumfield v. Dep’t of Fire, 569 So.2d 75, 77 (La. App. 4th Cir. 1990). Thus, we find that this assignment of error lacks merit.
Conclusion
For the foregoing reasons, the decision of the Civil Service Commission to reinstate Melissa Wilson with backpay and emoluments is affirmed.
AFFIRMED
BROUSSARD, J., CONCURS WITH REASONS

. The City maintains KPIs for each department of the City of New Orleans that the Chief Administrative Officer of the City compiles and releases to the public. A department of the city may be adversely affected by failure to meet a KPI. :

. Rules of the Civil Service Commission City of New Orleans, published February 24, 2016, http://www.nola.gov/civil-service/documents/ rules_2-24-2016-(bmg-revisions).

. Currently, the provision is found in section(b) of the regulation and states:
(b) If neither the employee nor the employer elects to substitute paid leave for unpaid FMLA leave under the above conditions and circumstances, the employee will remain entitled to all the paid leave which is earned or accrued under the terms of the employer’s plan. 29 C.F.R. § 825.207(b)

. Rules of the Civil Service Commission, Rule VIII, Sec, 2.5, states:
Use: An employee who has taken sick leave shall file with his or her appointing authority a letter stating the cause of the absence from work, provided that:
(a) If the amount of sick leave taken exceeds six .(6) consecutive working days, a registered physician must certify to the nature of the illness or injury and the necessity for absence after the sixth ■ consecutive working day.
(b) If there is a reasonable doubt of the validity of the employee's claim for consecutive sick leave of six (6) working days or less, the appointing authority may require a statement from a registered physician or some other acceptable proof that the em *151 ployee was ill, provided that the employee has been previously notified of the policies and conditions under which a physician's certificate will be required for absence of less than six (6) consecutive working-days.
(c) When an appointing authority has determined that an employee has charged an absence against sick leaye although no actual illness or injury as defined in Rule I occurred, the appointing authority must deduct the value of the absent time from the employee’s accrued annual leave or pay and may also take disciplinary action as deemed appropriate under the circumstances.
(d) When computing sick leave taken, deduction shall be made from accrued sick leave only for those days upon which an employee is scheduled to work.
(e) When there is a death in the immediate family of the employee, as defined in Rule I, the employee shall be allowed to use a maximum .of three (3) leave- days of sick leave. If travel time is deemed necessary, the appointing authority may grant an extra two (2) leave days of sick leave; but in no case shall the sick leave granted under this section aggregate more than five (5) leave days, (amended April 20, 1995).

. Rules of the Civil Service Commission, Rule VIII, Sec. 2.2, states in pertinent part;
Bonus Sick Leave Days; Each January 1, employees appointed subsequent to December 31, 1978, except for Emergency, Transient or other employees paid at special rates of pay in accordance with Rule IV, Section 4.1, shall be granted bonus sick days as follows; (amended April 20, 1995)
[[Image here]]
(d) Any employee who uses thirty (30) days or more of leave without pay in any calendar year shall not be able to accrue the bonus .sick days for that year.