Kevin V. Boshea, Attorney at Law, 2955 Ridgelake Drive, Suite 207, Metairie, LA 70002, COUNSEL FOR PLAINTIFF/APPELLANT
Elizabeth Robins, Deputy City Attorney, Isaka R. Williams, Assistant City Attorney, Cherrell S. Taplin, Sr. Chief Deputy City Attorney, Sunni J. LeBouf, City Attorney, 1300 Perdido Street, Room 5E03, New Orleans, LA 70112, COUNSEL FOR DEFENDANT/APPELLEE
(Court composed of Judge Daniel L. Dysart, Judge Tiffany G. Chase, Judge Dale N. Atkins )
Judge Tiffany G. Chase *751 Officer Alfred Moran (hereinafter "Officer Moran") seeks review of the February 28, 2018 decision issued by the Civil Service Commission (hereinafter "the Commission"). The decision denied Officer Moran's appeal and upheld his termination of employment with the New Orleans Police Department (hereinafter "the NOPD"). After consideration of the record before this Court and the applicable law, we affirm the decision of the Commission terminating Officer Moran.
Facts and Procedural History
On September 30, 2015, Officer Moran presented to the 8th District police station, preparing to transport arrestee Vincent Knapp (hereinafter "Knapp") to central lockup. Knapp was handcuffed and tethered to a bench inside the police station. Officer Lewis Simmons (hereinafter "Officer Simmons") escorted another arrested individual into the station around the same time. Officer Simmons placed his arrestee on the bench next to Knapp and positioned his body worn camera (hereinafter "BWC") on the desk directly in front of the bench. Officer Moran approached Knapp, in preparation for the transport, and placed his right hand on Knapp's shoulder. Knapp began shouting derogatory slurs at Officer Moran and kicked him. Officer Moran struck Knapp in the face with his left hand. Knapp continued to shout obscenities and Officer Moran struck Knapp in the face a second time. Present in the room during the incident were Officer Simmons, Officer Jeffery Tyler, Officer Kelli Dunnaway, Officer Christopher Jennings and Sergeant Samuel Dupre (hereinafter "Sgt. Dupre"). Officer Moran proceeded with the transport procedure and did not report the incident to his supervisor.
Sgt. Dupre, who was the supervisor on duty on the night of the incident, viewed video from Officer Simmons' BWC the following day. After viewing the video, he reported the incident to Lieutenant Kevin Burns (hereinafter "Lt. Burns") with the Public Integrity Bureau's Force Investigation Team (hereinafter "FIT"). Lt. Burns initiated a criminal investigation of the incident, while Sergeant John Helou (hereinafter "Sgt. Helou"), also with FIT, simultaneously initiated an administrative investigation.
On October 6, 2015, the Public Integrity Bureau instructed Officer Moran, as well as the other personnel present in the room during the incident, to complete a "Use of Force Statement." Officer Moran was allowed to view his BWC footage prior to providing his use of force statement, but was not allowed to view any other video surveillance. His BWC footage does not show the incident because it was not activated until after the incident occurred. On the same date, Officer Moran provided Lt. Burns with a criminal statement regarding the incident. Officer Moran testified that he "pushed" Knapp's face away from him, and attempted to "redirect" his face, in order to prevent Knapp from biting and spitting on him. He testified that Knapp was making biting and spitting gestures *752 toward him. Officer Moran further testified that he did not recall striking Knapp a second time. The Orleans Parish District Attorney's Office declined to pursue criminal charges against Officer Moran and the administrative investigation continued.
On November 18, 2015, Officer Moran completed an administrative statement with Sgt. Helou. His testimony was consistent with the testimony provided in his criminal statement. Sgt. Helou reviewed all available video footage of the incident. This included Officer Simmons' BWC, Officer Moran's BWC, the 8th District surveillance video footage and Officer Moran's patrol vehicle video footage. At the conclusion of the investigation, Sgt. Helou found that Officer Moran violated the NOPD rule regarding honesty and truthfulness. He reasoned that Officer Moran was untruthful, fabricating his version of events and his choice of words by describing his use of force as a "push."[1] Sgt. Helou recommended NOPD substantiate the allegations of misconduct against Officer Moran.
On June 15, 2016, Deputy Superintendent Paul Noel (hereinafter "Superintendent Noel"), chief of NOPD operations, conducted a disciplinary hearing. This was the first time Officer Moran was able to view the footage from Officer Simmons' BWC, which completely captured the incident. After viewing the footage, Officer Moran conceded that the strike appeared to be more of a "punch" rather than a "push." Superintendent Noel concluded that Officer Moran's responses during the hearing were purposefully deceptive. He reasoned that Officer Moran purposefully mischaracterized his contact with Knapp when he used the words "push" and "redirection" regarding his use of force. Additionally, Superintendent Noel found Officer Moran untruthful when he stated he did not recall striking Knapp a second time. Superintendent Noel reasoned that since Officer Moran testified this was the first time he struck an arrestee, it was not plausible that he could not remember striking Knapp the second time. Superintendent Noel recommended termination of employment due to violation of NOPD's rule on honesty and truthfulness. Superintendent Michael Harrison concurred and issued a letter of termination to Officer Moran.
Officer Moran appealed his termination to the Commission. The appeal was heard by a hearing officer over the course of four days. During the hearing, the hearing officer heard extensive testimony and viewed all evidence. The hearing officer concluded that Officer Moran's termination was warranted and noted that although Officer Moran violated other NOPD policies, he was only terminated for violation of the truthfulness rule. The hearing officer observed that the only level of discipline for violation of the NOPD's truthfulness rule is termination of employment. Therefore, the level of discipline was appropriate.
The Commission reviewed the transcript and exhibits from the hearing, as well as the hearing officer's report. The Commission issued its decision on February 28, 2018, finding Officer Moran intentionally provided misleading statements during the NOPD's investigation. The Commission determined, after viewing the video evidence, that a reasonable person in Officer Moran's situation would describe the two strikes to Knapp as a "slap" and a "punch." Additionally, the Commission found that Officer Moran's conduct did not illustrate that he was concerned about being "bit" or "spat on" given his close proximity to Knapp. The *753 Commission also found Officer Moran's failure to immediately notify his supervisor about the incident a contributing factor to its conclusions. It determined Officer Moran's failure to report the incident as recognition of the seriousness of the situation and that he attempted to avoid responsibility for his actions. The Commission denied Officer Moran's appeal and upheld his termination. This appeal followed.
Discussion
This Court has previously determined that decisions by the Commission involving questions of fact and law are reviewed under a manifest error/clearly erroneous standard of review.
In Banks v. New Orleans Police Dep't., 2001-0859, p. 3 (La.App. 4 Cir. 9/25/02), 829 So.2d 511, 513-14, we articulated the standard of review in civil service cases. First, the review by appellate courts of the factual findings in a civil service case is governed by the manifest error or clearly erroneous standard. Second, when the Commission's decision involves jurisdiction, procedure, and interpretation of laws or regulations, judicial review is not limited to the arbitrary, capricious, or abuse of discretion standard. Instead, on legal issues, appellate courts give no special weight to the findings of the trial court, but exercise their constitutional duty to review questions of law and render judgment on the record. A legal error occurs when a trial court applies the incorrect principles of law and such errors are prejudicial. Finally, a mixed question of fact and law should be accorded great deference by appellate courts under the manifest error standard of review. See Stern v. New Orleans City Planning Comm'n, 2003-0817, pp. 5-6 (La.App. 4 Cir. 9/17/03), 859 So.2d 696, 699-700.
Russell v. Mosquito Control Bd. , 2006-0346, pp. 7-8 (La.App. 4 Cir. 9/27/06), 941 So.2d 634, 639-640. As such, we will review this matter under a manifest error/clearly erroneous standard of review.
By his assignments of error, Officer Moran argues the Commission erred in upholding his termination for untruthfulness. He contends the evidence was insufficient to establish that his statements, regarding the incident, were intended to deceive the NOPD. Furthermore, Officer Moran maintains that the NOPD failed to meet its burden of proof.
"An employee with permanent status in the classified city service may only be terminated, or otherwise subjected to disciplinary action, in writing and for good cause." Laviolette v. Dep't of Police , 2016-0095, p. 5 (La.App. 4 Cir. 8/24/16), 200 So.3d 962, 966. This Court has determined that "good cause" includes conduct by the employee which is detrimental to the efficient operation of the department or prejudicial to the public service. Id. Therefore, the NOPD must prove by a preponderance of the evidence that the complained of activity and conduct impaired the efficiency of public service. Johnson v. Dep't of Police , 575 So.2d 440, 444 (La.App. 4 Cir. 1991).
When the appointing authority has terminated an employee, the Commission has a duty to review whether good or lawful cause exists for taking such disciplinary action against an employee. Id. at 443. Although the NOPD found Officer Moran violated various department policies, he was only terminated for violation of the rule regarding honesty and truthfulness.[2] Officer Moran contends that in providing *754 his statements he was "inaccurate" about the type of strike on Knapp, but not intentionally untruthful. The NOPD maintains that Officer Moran intentionally minimized the severity of the strike on Knapp. The Commission agreed with the NOPD.
The NOPD categorizes two statements by Officer Moran as untruthful: (1) the words used to describe his physical contact with Knapp and (2) Knapp's behavior that led to the strikes to his head.
A review of the video footage from the 8th District surveillance camera provides a clear view of the incident as it unfolded. While the level of disrespectful and derogatory statements Knapp yelled at Officer Moran cannot be disregarded, it does not negate Officer Moran's responsibility. The Commission noted that to find Officer Moran violated the rule regarding truthfulness it must find that Officer Moran provided a materially false statement with the intent to deceive the NOPD investigators. Officer Moran provided three statements regarding the incident. In all three statements he maintains that he "pushed" Knapp's face away from him in an attempt to prevent him from biting or spitting on him. However, a review of the video shows that the strike to Knapp's face, by Officer Moran, was not a "push" but more of a slap or punch.
Officer Moran maintains that Knapp was making biting and spitting gestures toward him and he pushed Knapp's face in order to prevent those actions. The Commission found that Officer Moran was untruthful in his statements that Knapp attempted to bite or spit on him. The Commission reasoned that the video does not illustrate Knapp making a biting or spitting gesture toward Officer Moran. We find this conclusion supported by the evidence. Specifically, a review of the video does not support Officer Moran's version of events. While Knapp is yelling derogatory comments, it does not appear that he is attempting to bite or spit on Officer Moran.
The Commission weighed the evidence and determined the NOPD established Officer Moran was untruthful in the statements he provided during the course of the investigation. This Court has previously held that " 'deference will be given to the factual conclusions of the Commission.' " Pope v. New Orleans Police Dep't , 2004-1888, p. 6 (La.App. 4 Cir. 4/20/05), 903 So.2d 1, 4 (quoting Smith v. New Orleans Police Dep't , 1999-0024, p. 5 (La.App. 4 Cir. 9/22/99), 743 So.2d 834, 837 ). The Commission deemed the evidence submitted by the NOPD sufficient to meet its burden of proof. Thus, we find the factual conclusions made by the Commission are *755 not contrary to the evidence and as such, will not be disturbed by this Court.
Conclusion
We review the decision of the Commission to determine if its actions are arbitrary or capricious. "A decision by the Civil Service Commission is 'arbitrary or capricious' if there is no rational basis for the action taken by the Civil Service Commission." Waguespack v. Dep't. of Police , 2012-1691, p. 3 (La.App. 4 Cir. 6/26/13), 119 So.3d 976, 978. The Commission's decision should not be modified absent such a finding. Based on the record before this Court, we do not find the decision of the Commission arbitrary or capricious. The Commission found Officer Moran's description of the type of strike on Knapp intentionally deceptive and designed to thwart the investigation into his actions. The Commission also found Officer Moran's failure to immediately notify his supervisor a contributing factor in its decision. It reasoned that Officer Moran was aware of the severity of his actions and attempted to avoid responsibility by failing to report his actions. The Commission determined that Officer Moran deliberately misled the investigation in order to avoid discipline.
For the foregoing reasons, we find the record reasonably supports the Commission's decision to uphold Officer Moran's termination due to his violation of the NOPD's rule regarding honesty and truthfulness. Therefore, the Commission was not manifestly erroneous in finding the evidence presented by the NOPD sufficient to terminate Officer Moran.
AFFIRMED

Sgt. Helou also found Officer Moran violated the NOPD rules regarding unauthorized force, notification to supervisors, officer responsibilities and prisoner transportation.

Rule 2: Moral Conduct, Paragraph 3: Honesty and Truthfulness
Honesty and Truthfulness
Employees are required to be honest and truthful at all times, in their spoken, written, or electronic communications. Truthfulness shall apply when an employee makes a materially false statement with the intent to deceive. A statement is material when, irrespective of its admissibility under the rules of evidence, it could have affected the course or outcome of an investigation or an official proceeding, whether under oath or not, in all matters and official investigations relating to the scope of their employment and operations of the Department, as follows:
(a) Employees shall truthfully state the facts in any oral, written, or electronic communication;
(b) Employees shall not willfully or negligently make any false, misleading, or incorrect oral, written, or electronic communication;
(c) Employees shall not willfully or negligently withhold relevant information of which they have knowledge, from any oral, written, or electronic communication;
(d) Employees shall truthfully answer all questions directed to them on the order of the Superintendent of Police, the Superintendent's designee, a superior officer, or any judicial, departmental, or other official investigative body....